# Flournoy *vs* Johnson & Tingley.

### ERROR TO THE McCRACKEN CIRCUIT.

*Devises.   Uses.   Trusts.   Chancery jurisdiction.*

CHIEF JUSTICE MARSHALL delivered the opinion of the Court.

CHANCERY.

*Case* 162.

*October* 11.

*Cosby* vs *Ferguson,* (3 *J. J. Mar.* 264,) cited, and with approbation.

IT was in effect decided in the case of *Cosby* vs *Ferguson,* (3 *J. J. Marshall,* 264.) that a provision in a deed of trust for the benefit of a man and his family, is to be regarded as securing a benefit and interest to the family, which if the deed be valid, cannot be subjected to the debts of the husband, and that the benefit secured to him as distinct from that secured to his family, is the only interest which can be subjected. And as the trust created by the will of Jourdan Flournoy, for the "special use and benefit of his son William and his family, if he should have one," is if effectual at all, with regard to the benefit intended for the family, precisely of the same nature, it follows on the authority of the case referred to, that if the trust was effectual and subsisting at the time, no interest in the trust property, (slaves,) was subject to the execution of Johnson & Tingley against William Flournoy, except such as upon a fair estimate of the value of the benefit secured to him as compared with the value of the benefit secured to his family, would appear to be his proportional interest in the property.

Assuming that this interest, partial and involved as it was, might be the subject of levy and sale under execution, it is obvious that a resort to a Court of equity for its ascertainment, would be appropriate if not absolutely necessary. And as a sale of it, or of whatever interest the defendant, William, might have in the slaves, or of the slaves themselves, under an execution against him, and without ascertaining his interest, would probably have occasioned a sacrifice, as well as a confusion of rights, and would have greatly embarrassed the trust for the benefit of the family; and as the trustees had no legal remedy for preventing a sale, even of the whole, be-

The interest of one of several *cestui que trusts,* may be properly decreed to be sold by the chancellor to pay the debts of such beneficiary.

FLOURNOY
*vs*
JOHNSON & TINGLEY.

A devise to a trustee in trust for the benefit of one "and his family if he should have one' is valid in both its branches, though it be contingent as to the family, as to whom it is an executory devise depending on a contingency which must happen within the life of a person in being, a springing or shifting use.

Trustees having the power to relinquish the entire estate in property to *cestui que trust* at discretion, will not be presumed to have done so, from the fact that they permitted *cestui que trust* to sell the property, (slaves) and pay the taxes, though he sold one, but without their approbation.

fore a division, and no legal remedy for partition, or ascertainment of the interest which might be sold, we think that if the trust were valid and subsisting, the Court of equity ought not to have dismissed the bill of the trustees, but should have proceeded to ascertain the interest of William Flournoy, and subjected it to sale, so far as necessary, in such manner as would make it available without injury to other interests secured by the trust.

The devise in trust for the benefit of William, "and his family if he should have one," we think is valid in both its branches, though as to the family it is dependent of course on the contingency of there being one. As to the family, it is an executory or future devise, on a contingency which must happen if at all, within the life of William. It is in effect a devise of the benefit to William until he has a family, and then to him and his family, and is in the nature of a springing or shifting use, the family, when there shall be one, and as it shall increase, being entitled to an interest which may vary as the family increases. Whether before the marriage of William, the entire property thus devised might have been subjected to his debts, on the ground that he had then the entire benefit or interest, subject only to be partially divested on a contingency which might never happen, we need not decide. His family, since he has had one, has had a vested interest in the trust, which the testator in disposing of his own property had a right to give, and which is in equity entitled to protection while it subsists.

The will, however, subjects this interest to be defeated or determined, and the entire trust to be ended, by providing that if the trustees, or either of them, should become satisfied that he, (William,) has a suitable disposition to take care and manage his affairs, then they or either of them, are at liberty to convey and put him in possession of said slaves, to do as he may think proper with them. It is contended on the part of the execution creditors, that this had been done in substance, by allowing William to have the possession and ostensible control of the slaves or some of them, for several years before the levy of their execution, during which period he had sold one of them and had paid the taxes on others.

We are of opinion, however, that the possession of the slaves for the use of himself and family, was a mode of enjoying the intended benefit not inconsistent with the trust; and as the revenue laws of that period did not require the owner of slaves (in contradistinction to the mere possessor,) to pay the taxes on them, and as the sale referred to was made without the knowledge of the trustees, and though acquiesced in, was disapproved, we think these circumstances do not furnish sufficient evidence of an intentional surrender of the slaves, or relinquishment of the trust under the authority given by the will, and especially as they continued from time to time to assert the contrary. It is true, that as the will, which was made and proved in Virginia, had never been recorded in Kentucky, the circumstances referred to were calculated to give to William Flournoy a credit founded on his supposed ownership of the slaves. But it takes five years possession to subject the property to the debts of the person in possession on this ground alone. Those to whom the provisions of the will were unknown, had no other evidence of his right but the possession, and those who knew the provisions of the will, had the means of knowing whether the trustees had relinquished the title.

Whether even five years possession of the slaves by William Flournoy, in the use of himself and family, would have defeated the interest of the family, and rendered the whole subject to his debts, we need not inquire. He had not had five years possession before the execution was levied, nor before the trustees by an action of replevin regained the possession, and the subject having been in litigation ever since, the question of right is not affected by the subsequent possession, as to which, however, the record gives little information.

We conclude, that as to the interest of William Flournoy's family, the trust was valid and subsisting when the execution was levied, and is so still. And as in consequence of the interest of William Flournoy being subject to his debts, and liable to execution, the action of replevin, if sustainable at all, was an inappropriate and inadequate remedy for the assertion of the right of the trustees, and their proper remedy is in equity, the non-

suit or dismissal in the action of replevin is no bar to the granting of relief on their bill, which prays that a suitable provision out of the slaves be made for the wife and children of William Flournoy, and also for general relief. The appropriate relief would have been to ascertain and sell the interest of William Flournoy in the slaves, and to have decreed the trust valid as to the residue, as against the execution of Johnson and Tingley.

There is an intrinsic difficulty in ascertaining and separating the interest of the husband and father in property placed in trust for the use and benefit of himself and family. It is probably contrary to the intention of the donor or testator in this case, that there should be any such separation with a view to taking away any part of the property from the common use. But under the statute of 1796, Sec. 13, (1 *Stat. Law*, 443,) as heretofore construed, the interest of a *cestui que trust* in property held in trust for his benefit, as in this case, is subject to his debts as the legal estate would be if he held it. And when that interest is partial and undivided and unascertained, it becomes necessary to the operation of the statute in the case, that it should be ascertained as nearly as may be, so as not to do injustice to others. We suppose this may be done in the following manner: Having ascertained or assumed a sum sufficient for the comfortable support of the husband and family in common, ascertain in the best practicable mode, what portion of that sum would, in the ordinary course of expenditure, go to the support of the husband, and what portion to the residue of the family living in common, and whatever portion, as a third or a sixth, as thus ascertained, would go to the husband's support as one of the family, the same is his portion or the measure of his interest in the trust property, and the residue of the property is to be considered as held in trust for his family, exclusive of himself. His interest, or so much as is necessary, should be sold for payment of his debts, either before or after an actual partition, as may be most convenient or advantageous.

The decree is reversed and the cause remanded for further proceedings and decree, in conformity with this opinion.

*Harlan & Craddock* for plaintiff; *Husbands* for def'ts.

The Chancellor may decree the sale of the interest of one of several *cestui que trusts* in trust property, to pay debts, it is made subject by the statute of 1796. Sec. 13, (1 *Stat. Law*, 443.)

The mode by which to ascertain the interest of one of several *cestui que trusts* in trust property.