Mercier v. The West Kansas City Land Company.

---

MERCIER et al., *Plaintiffs in Error*, v. THE WEST KANSAS CITY LAND COMPANY.

1. **Wife's Equity, Rule as to Settlement of**: EFFECT OF SETTLEMENT UPON HER AND HER HEIRS. It seems to be an established rule in England, and perhaps also in the United States, that a court of equity, in making settlement of the property of a married woman, will direct the title to be held in trust for her and her children, not for her alone. Without deciding whether this rule prevails in Missouri; *Held*, that where a married woman applied to a court of equity to have certain funds belonging to her invested in land for a home for herself *and her family*, and the court, with all the facts before it, ordered that the investment should be made as prayed, and appointed a trustee to hold the land for her *and her heirs*, and directed that a conveyance be made to him accordingly, a conveyance taken in conformity to such decree conferred upon her an absolute estate in equity, not an estate for life with remainder to her children. HOUGH, J., dissented.

2. **Married Woman's Trust Estate**: WAIVER OF IRREGULARITY IN APPEARANCE. If a married woman's trustee receives the proceeds of land sold under a decree of court, and there is no evidence that he has failed to comply with his trust, neither she nor her heirs can avoid the sale on the ground that in the proceeding, which resulted in the decree, she appeared by attorney and not by next friend.

*Error to Jackson Circuit Court.*—HON. SAMUEL L. SAWYER,
Judge.

AFFIRMED.

This was an action of ejectment. The answer of defendant, after denying the plaintiffs' right to possession, set up a title in defendant under a deed executed by William Gillis, as trustee of Maria Louisa Mercier and her family, dated November 20th, 1865 ; that this deed was so made in pursuance of an order or decree of the circuit court of Jackson county, made September 23rd, 1858, upon a petition that day filed in said court by said Gillis, as such trustee, and said Maria Louisa Mercier, in her own right ; that the title to said lands so conveyed had been vested in Gillis, as trustee, by a deed thereof executed to him by Benoist Troost and wife, dated March 15th, 1850; that said lands had been purchased by said Gillis in the year 1847, of Joseph Euneau, who had deeded the same to said Benoist Troost in pursuance of an order of said court, made September, 1847, directing such purchase, and the money with which such purchase was so made was then, and had for some time been held by said Gillis in trust for the sole and separate use of said Maria Louisa Mercier, free from the management, control or interest in any wise of Prosper Mercier, her husband, and that Maria Louisa Mercier was the mother of plaintiffs, Frederick Mercier and Peter Mercier. To this answer plaintiffs replied by a general denial.

The case was heard by the court upon an agreed statement of facts, of which the following is the substance : Plaintiffs and defendant both claim title under a deed of Benoist Troost to William Gillis, as trustee of Maria Louisa Mercier and her family, dated March 15th, 1850, conveying the premises and other property. On the 20th day of November, 1865, Gillis conveyed the premises to defendant by a deed, as follows :

Know all men by these presents, as follows : Whereas, on the 23rd day of September, 1858, and during the September term for said year of the circuit court of Jackson county, in the State of Missouri, on the petition of William Gillis, as trustee for Maria Louisa Mercier and her family, and the said Maria Louisa Mercier in her own right, an order was made by said court and entered of record, authorizing the said William Gillis, as trustee aforesaid, to sell and convey at private sale, the following described parcel of land, to-wit :     *     *     And, whereas, pursuant to the provisions of said order, said William Gillis, trustee as aforesaid, did, soon after the date of said order, sell said real estate to Solomon Houck and others, in consideration of $4,646, which was in hand paid ; and, whereas, it appears that the deed to said land (if made) has not been recorded, and is lost, mislaid or destroyed; and, whereas, said land has since been sold and conveyed by the parties purchasing from said Gillis, to the West Kansas City Land Company, to whom it now belongs. Now, for the purpose of completing the title to said real estate, and vesting it completely and fully in said West Kansas City Land Company, and in consideration of the premises aforesaid, and by virtue of the authority in me vested by said order of sale, I, William Gillis, as trustee aforesaid, do hereby grant, sell and convey, and confirm unto the West Kansas City Land Company, all the right, title and interest in and to the tract of land authorized to be sold by the aforesaid order of sale, which I can sell and convey by virtue of the premises aforesaid.  To have and to hold the real estate hereby conveyed, with all the rights, privileges and appurtenances thereunto belonging, to the said West Kansas City Land Company, and her assigns forever.  In testimony whereof, etc.

The order of the circuit court referred to in said deed, was as follows :

WILLIAM GILLIS, AS TRUSTEE FOR  
  MARIA LOUISA MERCIER AND HER     } *Petition Ex Parte.*  
  FAMILY, AND MARIA LOUISA MERCIER. }

Now at this day come the petitioners aforesaid, by their attorney, and file their petition herein, praying for the sale of certain real estate therein, whereupon the court doth find that said Gillis, as trustee aforesaid, in the month of September, 1847, had in his hands as such trustee, a certain sum of money, and that under an order of this court of September term, 1847, the sum of $300 of said sum was ordered to be invested in real estate for the benefit of the said Maria Louisa Mercier and her family, with directions to take a deed for the same in the name of said Gillis, for the benefit of the said Maria Louisa Mercier and her family. And the court doth further find, that in pursuance of said order, the following tract of land was purchased by said Gillis, as trustee as aforesaid, for the benefit aforesaid, viz:    *    *    And the court doth further find that said land has been greatly increased in value since the said purchase, and that there is more than a sufficiency for a home of the said Maria Louisa Mercier and her family, and that it would be greatly to their interest to sell a portion of the said land, to re-invest the proceeds thereof in other real estate, or to loan the same out at interest for their benefit. It is, therefore, ordered, adjudged and decreed by the court, that the said William Gillis, as trustee as aforesaid, be, and he is hereby authorized to sell all of said real estate as aforesaid, so held by him in trust as aforesaid, with the exception of twenty acres out of the northeast corner of said quarter section, as follows, to-wit:    *

*    reserving the same as a home for the use and benefit of the said Maria Louisa Mercier and her family. And it is further decreed, that the said trustee be, and he is hereby authorized to sell the said real estate as aforesaid, (with the exception of said twenty acres reserved as a home for said heirs,) at private sale, on such terms as he may deem best, for the benefit of said heirs, and that when sold he

convey the same by deed to the purchaser thereof, and receive the proceeds thereof, and either re-invest the same in other real estate, or loan the same at interest on undoubted security, as to him shall seem will most conduce to the benefit of said heirs, and that he report his proceedings in the premises.

The petition upon which the order was made, was as follows:

*To the Honorable, the Circuit Court of Jackson County;*

Your petitioners, William Gillis, as trustee for Maria Louisa Mercier and her family, and she, the said Maria Louisa, would respectfully represent that in the month of September, 1847, the said William Gillis, as trustee as aforesaid, had in his hands as such trustee, a certain amount of money, and on the petition of said Maria Louisa, by her next friend, to the aforesaid circuit court, an order was made at the September term, 1847, to invest $300 of said fund in real estate for a home for said Maria Louisa and her family, with directions to take the deed for such land to said Gillis for said Mrs. Mercier and her heirs, and that in pursuance to said order of the court so made as aforesaid, said Gillis did purchase the following tract of land, to-wit:    *    *    And your petitioners state that since the purchase of said land, the same has greatly advanced in value, and they believe it will be to the interest of those interested that a part of the same should be sold, and the proceeds put at interest, or re-invested in real estate; and your petitioners desire to sell all of said tract, except twenty acres, bounded as follows:    *    *    Your petitioners state that said twenty acres proposed to be kept will make a sufficient home for said Mrs. Mercier and her family, and the proceeds of the balance, if sold, will be much more advantageous to the parties interested in said land than the land itself; and your petitioners, therefore, pray for an order of this court, authorizing the said William Gillis, trustee as aforesaid, to sell the aforesaid 46 and 46-100

acres of land at private sale, on such terms as he may deem best; and when sold to convey the same to the purchaser thereof, and to receive and hold the proceeds in trust for the use of said Mrs. Mercier and her family.

> WILLIAM GILLIS, Trustee, etc., and .
> MARIA LOUISA MERCIER,
> BY CHRISMAN & COMINGO, *Attys.*

This petition was filed and the foregoing order made on September 23rd, 1858.

Maria Louisa Mercier was a daughter and one of the heirs at law of Gabriel Prudhomme, who died in 1831, seized of a tract of land in Jackson county. In 1837, she, being then the wife of Prosper Mercier, brought suit and obtained partition and sale of said land so descended from Gabriel Prudhomme. The proceeds of said sale being in the hands of the commissioners, the creditors of her husband, Prosper Mercier, who had in the meantime abandoned her, sought to subject it to the payment of their debts. She thereupon, by her next friend, filed a bill in equity against the creditors, her husband and the commissioners. In this bill were stated fully the facts of her inheritance of the money in her own right, her desertion by her husband, the helpless condition of her family, and the attempt of the creditors to subject the fund to their debts; and the prayer was that the creditors be restrained from collecting the money from the commissioners, and that the commissioners be ordered to pay the fund over to herself, and for further relief. Prosper Mercier made default and the bill as to him was taken *pro confesso;* the other parties appeared and pleaded. At the December term, 1842, the court entered its final decree restraining the commissioners from paying over Mrs. Mercier's share of the money in their hands to any person but herself; directing them to pay the money to her, and subsequently, on her motion, directing the commissioners to hold the money in their hands until the further order of the court.

At the August term, 1843, Mrs. Mercier, by her next friend, filed a petition in the case, stating that her husband, Prosper Mercier, was a man of unsteady habits, greatly in debt, and wholly unfit to manage the funds ordered by the decree aforesaid to be paid to her, and praying the court to appoint a trustee to receive and manage the same; whereupon the court appointed William Gillis to be trustee for that purpose. Gillis entered upon this trust and executed it under the direction of the court until the September term, 1847, when Mrs. Mercier, by her next friend, filed a petition stating the inadequacy of the interest of said fund to support her, and that with a portion of it land might be purchased sufficient to support her and her family, and asking the court to order and decree that a sufficient part of said fund should be applied to making such purchase, and that William Gillis, or some suitable person, be appointed a commissioner to make said purchase and a trustee to hold said land for her use and benefit. The court thereupon made the following order:

MARIA LOUISA MERCIER, BY HER NEXT FRIEND, BENOIST TROOST. } *On petition to vest trust funds in real estate.*

Now at this day comes the said petitioner, by her solicitor, and files her petition herein, praying the court to make an order on William Gillis, trustee of certain funds in his hands belonging to her, and authorizing and requiring said trustee to vest a certain portion of said funds in land for a home for the said petitioner, Maria Louisa Mercier and her family, which said petition being by the court heard and fully understood, and it being manifest to the court that it would conduce greatly to the comfort and happiness of said petitioner, and her family, to vest a portion of said trust funds in land for a home for the said petitioner and her family; it is, therefore, ordered, adjudged and decreed, by the court here, that William Gillis, trustee of the funds of the said Maria Louisa be, and he is hereby authorized and required to vest the sum of $300 of

the funds in his hands belonging to the said petitioner, in land for a home for the said petitioner and her family, and the court doth hereby appoint said Gillis commissioner to hold said land in trust for the said Maria Louisa and her heirs, and orders that the deed of conveyance for said land so ordered to be purchased as aforesaid, be made to the said Gillis, commissioner for the said Maria Louisa Mercier and her heirs ; and it is further ordered that said commissioner report his proceedings in the premises to the next term of this court, and this cause is continued.

Under this order a tract of land was purchased and conveyed to Gillis, as trustee of Maria Louisa Mercier and her family, by Benoist Troost, by the deed dated March 15th, 1850. Maria Louisa Mercier died in February, 1868. Prosper Mercier was still living when this suit was brought. The plaintiffs were the only surviving children of Maria Louisa.

The plaintiffs asked instructions that upon these facts they were entitled to recover the property, and that defendant had shown no title, all of which the court refused to give. The defendant asked several instructions, of which, among others, the court gave the following : 7. The deed from Troost to Gillis, by referring to the decree of 1847, made that a part of the deed, and they must be taken and construed together, and that deed vested in Mrs. Mercier a fee simple title in equity, and the sale and conveyance by Gillis passed the whole title to his grantee, the West Kansas City Land Company. 8. The fact that Mrs. Mercier joined in the petition and proceedings which resulted in the decree of 1858, was a consenting to the sale of the land by Gillis. The finding and judgment were for the defendant.

*Gage & Ladd* for plaintiffs in error.

1. The legal effect of the decree of 1842 was to make what is known in equity as a provision for maintenance

in favor of Mrs. Mercier. Her interest under that decree
did not constitute a separate estate or what is known as
the wife's equity. For the distinction between these equit-
able interests, see Clancy on Rights of Married Women,
pp. 447, 448. In this decree the children were not men-
tioned. The court, however, retained control of the fund,
and administered it through Gillis, the trustee, excluding
both the husband and the creditors. Afterward, by the
decree of 1847, the court, instead of the temporary pro-
vision for maintenance, finally and fully established a wife's
equity in favor of Mrs. Mercier and her children, whereby
she took an estate for life in the property, and the children
took the remainder. This appears from several considera-
tions: (1) The court had no power to make any perma-
nent provision for her benefit which did not include her
children. Clancy Rights Married Women, pp. 446, 468, 469,
475; *Kenny v. Udall*, 5 John. Ch. 464; *s. c.*, 3 Cow. 590;
*Mumford v. Murray*, 1 Paige 620; *Haviland v. Myers*, 6
John. Ch. 25; *Lloyd v. Mason*, 5 Hare 148; *In re Suggitt's
Trusts*, Law Rep. 3 Ch. App. 215; *Helms v. Franciscus*, 2
Bland's Ch. 544; *Greer v. Boone*, 5 B. Mon. 554; Perry on
Trusts, §§ 627 to 638; Story Eq. Jur., §§ 1402 to 1420;
Hill on Trustees, (4 Am. Ed.) side pp. 408 to 414; *Lloyd
v. Williams*, 1 Madd. 244; *Murray v. Elibank*, 13 Ves. 1;
*Groves v. Clarke*, 1 Keen 132. The wife's equity has been
recognized by this court. 48 Mo. 145. (2) Throughout
the order and in the deed from Troost to Gillis the words
"family" and "heirs" are used as equivalents. The set-
tlement is in favor of Mrs. Mercier and her family. Family
means children. *In re Terry's Will*, 19 Beav. 580; *Barnes
v. Patch*, 8 Ves. 607; *Woods v. Woods*, 1 Myl. & Cr. 409;
*MacLeroth v. Bacon*, 5 Ves. 159; *White v. White*, 30 Vt. 338;
*Flournoy v. Johnson*, 7 B. Mon. 693; *Cosby v. Ferguson*, 3
J. J. Marsh. 264; *Baker v. Nall*, 59 Mo. 264; *Hall v. Steph-
ens*, 65 Mo. 670; *Kinney v. Mathews*, 69 Mo. 520. Heirs
may and often does have this meaning. 2 Washburne Real
Prop., (3 Ed.) side p. 274; *Thurston v. Thurston*, 6 R. I.

296; *Williamson v. Williamson,* 18 B. Mon. 329; *Rutty v. Tyler,* 3 Day 470.

2. If Mrs. Mercier's children had had no interest in the property, the sale would have been invalid as an act of the court for three reasons. (1) The court had no power by any form of procedure to order it. There was no statutory authority for it, and as Mrs. Mercier and her trustee were competent to convey it by deed, there was no inherent power in the court to order a conveyance. Courts cannot be made the instruments of parties competent to convey their own property in conveying it. (2) Mrs. Mercier was no party to the decree, her only appearance in the proceeding being by attorney. Such appearance was *ipso facto* void and gave the court no jurisdiction over her or her property. R. S. 1855, p. 1218, § 7; *Claflin v. Van Wagoner,* 32 Mo. 252; *Fox v. Tooke,* 34 Mo. 509; *Gibson v. Chouteau,* 39 Mo. 536. Mrs. Mercier had no power to employ an attorney to appear for her. *In re Waugh,* 15 Beav. 508; *Wake v. Parker,* 2 Keen 59; *Hughes v. Evans,* 1 Sim. & Stuart 185; *Wood v. Wood,* 8 Wend. 370; *Wallingsford v. Wallingsford,* 6 Har. & J. 485; *Griffith v. Clarke,* 18 Md. 457; *Patton v. Stewart,* 19 Ind. 237. (3) The proceeding was not by the usual process of the court, but was summary and not authorized by statute. *Williamson v. Berry,* 8 How. 556, 557; *Sollee v. Croft,* 7 Rich. Eq. 34; *Horspool v. Davis,* 6 Bosw. 581.

3. The interest of the children was not bound by the decree. (1) Because they were not parties to the proceeding. (2) Because the court had no power to authorize a sale of their interest. There is no inherent power in a court of chancery to authorize a sale of an infant's real estate for his own benefit. *Kearney v. Vaughan,* 50 Mo. 284; *Hindman v. Piper,* 50 Mo. 292; *Stewart v. Griffith,* 33 Mo. 13; *Gannett v. Leonard,* 47 Mo. 205; *Taylor v. Phillips,* 2 Ves. 23; Schouler's Domestic Relations, 480; Hill on Trustees, (4 Am. Ed.) 396, note 1; Perry on trusts, §§ 605, 606, 610; *Blagge v. Miles,* 1 Story 444; *Faulkner v. Davis,*

18 Gratt. 651; *Pierce v. Trigg*, 10 Leigh 406; *Baker v. Lorillard*, 4 Comst. 257; *Williams' Case*, 3 Bland's Ch. 205; *Thurston v. Thurston*, 6 R. I. 296; *Horton v. McCoy*, 47 N. Y. 21; *Rogers v. Dill*, 6 Hill 415; Cooley's Const. Lims., (2 Ed.) 96 *et seq; Rice v. Parkman*, 16 Mass. 326; *Williamson v. Berry*. 8 How. 495. This is as true of estates held in trust for infants as of legal estates. *Clarke v. Van Surlay*, 15 Wend. 436; *Cochran v. Van Surlay*, 20 Wend. 365; *Williamson v. Berry*, 8 How. 495; *Field v. Moore*, 19 Beav. 176; *s. c.*, 7 DeG. M. & G. 691; *Lassence v. Tierney*, 1 Mac. & G. 551; *Lechmere v. Brotheridge*, 32 Beav. 353; *Pierce v. Trigg*, 10 Leigh 406; *Faulkner v. Davis*, 18 Gratt. 651; *Thurston v. Thurston*, 6 R. I. 296; Cooley's Const. Lim., (2 Ed.) 96. Prior to 1865 the power to authorize a sale of infant's real estate was vested in the legislature. *Hindman v. Piper*, 50 Mo. 292. It certainly was constantly exercised by the legislature. Acts 1858–9, pp. 76 to 148; Acts 1856–7, pp. 705 to 744; 1859–60, pp. 634 to 680. If it was a legislative power, it could not be exercised by the courts. The constitution forbids the exercise by any department of the government of powers belonging to another.

4. It cannot be said that though not valid as a judicial act, the sale was valid as the personal act of Mrs. Mercier. There is nothing to show that she invoked the intervention of the court or the act of Gillis, her trustee. The only evidence is the appearance of Chrisman & Comingo as attorneys for her; but this was void because she could not appear by attorney. The court had no jurisdiction of the subject matter in hand. It is true that an appearance by an attorney at law in a regular proceeding is presumed to be authorized by the client, but that is only true where the party is competent to appear by attorney, and the court has jurisdiction of the subject matter. Even then this presumption only prevails for the purpose of sustaining that proceeding in its judicial aspect. That presumption is not evidence of their authority to so appear for any other purpose than to sustain the proceedings had

in the case. But even if the authority of the attorneys to so appear were valid, it would impart no validity to the sale. It would have only been equivalent to her asking Gillis, the trustee, to make the sale, and he had no power to sell. He was a trustee to hold and keep this land for a home, not to sell it; and a consent not in writing cannot be substituted for a valid power of attorney.

5. Nor is there any estoppel. The purchaser bought, relying not on any representations of Mrs. Mercier, but on the power of the court to authorize the sale. *Field v. Moore*, 19 Beav. 176.

*Pratt, Brumback & Ferry* for defendant in error.

1. The deed from Troost to Gillis invested in the latter a legal title in fee, and in Mrs. Mercier, as sole beneficiary in the trust, "an equitable fee." Perry on Trusts, (1 Ed.) §§ 357, 358, 359. Words of inheritance being used, they must be given full effect, unless a contrary intention appears. R. S. 1845, p. 219, § 2. Mrs. Mercier was absolute owner of the fund, and so far from entertaining any purpose of accepting a less estate in it, all the proceedings as disclosed in the record show that she intended to retain the same estate.

2. The decree awarded the money to her absolutely, not as her legal but her equitable property, and to protect it against her husband, the court appointed a trustee for her, not for her and her children. This was done in virtue of what is known in chancery law as her "equity to a settlement." Such right is personal to a married woman, and for this reason she may waive it, and thereby exclude herself and her children. The children have no right to a settlement "independent of contract or decree." It is true the court usually extends the benefit of the settlement to the children; but if no provision be made for them, the omission, if it has long been acquiesced in, will not be supplied. 1 Lead. Cas. Eq., (4 Am. Ed.) pt. 2, pp. 653, 659;

*Johnson v. Johnson,* 1 Jac. & W. 479; *Hodgens v. Hodgens,* 11 Bligh N. R. 103; *Spirett v. Willows,* L. R. 4 Chan. App. 407. In the present case there was no provision in favor of children. The fund was small, the country was new, and the court went to the heart of her trouble and gave her the whole of the proceeds of. the sale of her land as her separate property, and put it in a trustee for her, without going through the formality, usual in the English chancery practice, of reference to a master to report what would be a fair settlement, and without any deed of settlement, and without making any provision for children. The court had the right to subject the whole. 1 Lead. Cas. Eq., 658, 676. No provision was made, or intended to be made, for the children, and they cannot bottom any right to this land on the ground that in the chancery case the court might, or even should have secured something to them, or even erred in not doing it. She might have claimed something for them, but did not. She claimed and got all for herself. Story Eq. Jur., (2 Ed.) § 1417. The right of children in such cases rests on the presumption that the mother desires some provision for them. There is no room for such presumption here. The decree binds according to its terms, and no mere chancery rule can be invoked to show that the children acquired a right to have a decree for their benefit, when the court did not follow such rule.

3. The word " heirs " is used in the decree of 1847 in its ordinary, technical sense, to show the extent of the interest in equity, or as beneficiary under the trust, that Mrs. Mercier was to have. They do not mean heirs of her body, or children, nor are they used to show that her children were to be beneficiaries, or purchasers under the conveyance of land to be made. The land was to be purchased for a home for Mrs. Mercier and her family; but the equitable estate was by the terms of the decree to be vested in trust for her and her heirs. The word family in the petition and decree was used merely to state a good reason for investing Mrs. Mercier's money in lands, not to show who was to have the

land. When the court specifies, for whom the land is to be held in trust it does not use loose terms as, Mrs. Mercier and her family, but exact technical words, Mrs. Mercier and her heirs. The deed to Gillis, trustee, conforms to this decree.

4. Again, the money paid for the land belonged absolutely to Mrs. Mercier. Her petition to invest it in land, though proper, was wholly unnecessary. If Gillis had purchased the land for a home for her, there would have been no breach of trust on his part; at least she could not have complained. Perry on Trusts, § 467. On such a petition as was presented, the court had no power to decide that the children had an interest in the money, or to order it used to buy land and give them an interest therein. The title to the land follows the money that pays for it. *Kinney v. Mathews*, 69 Mo. 520, 526.

5. Again, if the word " family " in the order and deed is to control, then, under *Hall v. Stephens*, 65 Mo. 670, the children would take as tenants in common, each a share, and husband and wife together two shares as tenants of the entirety, with right of survivorship; *i. e.*, they would have a joint seizin of two shares. This would certainly be different from the intention of the court and the parties. No one contemplated any such absurdity as taking the money of Mrs. Mercier and vesting the title of the land purchased therewith, so that she did not have even a life estate in it, nor anything which she could use, and so that her husband " has absolute control of the property during the life of his wife, and may make a valid lease during his life in his own name." *Hall v. Stephens.*

6. The husband having been party to the decree of 1842, it is to be construed as though he, by voluntary contract, transferred the money to a trustee for the use of his wife. A gift of land or personalty by husband to a trustee for the use of his wife necessarily makes a separate estate. *Steel v. Steel*, 1 Ired. Eq. 452; *Powell v. Powell*, 9 Humph. 486, 487; *Whitten v. Whitten*, 3 Cush. 198; 1 Lead. Cas. Eq.

(4 Am. Ed.) pt. 2, p. 733. The husband's marital rights were excluded from the money, and never attached to the land, and that makes it the separate property of the wife. *Burnley v. Thomas*, 63 Mo. 390; Perry on Trusts, § 648; *Clark v. Maguire*, 16 Mo. 302. No special or technical words are needed to create a separate estate. *Beal v. Morgner*, 46 Mo. 50; *Buck v. Ashbrook*, 59 Mo. 202; *Metropolitan Bank v. Taylor*, 53 Mo. 444; *Garner v. Jones*, 52 Mo. 72.

7. Gillis held the money received from the sale of the land upon the same trust as he had held the land. The sale and conveyance passed a fee discharged of the separate use trust. Mrs. Mercier was not prohibited from anticipation or alienation, nor was a form of disposition by her prescribed. All that was essential to bind her and divest her estate was her direction, either verbal or written, to Gillis to sell and convey, or her consent to his doing so. *Miller v. Brown*, 47 Mo. 504, 510, 512. She had the complete *jus disponendi*. *De Baun v. Van Wagoner*, 56 Mo. 349; Lewin on Trusts, (2 Am. Ed.) p. 595; Perry on Trusts, (1 Ed.) § 520; *Yale v. Dederer*, 22 N. Y. 452; *Claflin v. Van Wagoner*, 32 Mo. 252; 1 Bishop on Marr. Wom., §§ 860, 861, 862; *Morrison v. Thistle*, 67 Mo. 596, 601. Her petition and the order of court thereon for Gillis to convey, at least constitute a request or direction from her to him to convey within this rule. This rule, as to the trustee being bound to obey, and being protected by the direction of the beneficiary to convey, applies in the case of a married woman and her separate use property, as well as where there is an ordinary dry trust. *Arrington v. Cherry*, 10 Ga. 434.

8. Mrs. Mercier's appearance by attorney instead of next friend, was an irregularity which she could and did waive. *Claflin v. Van Wagoner*, 32 Mo. 253; *Fox v. Tooke*, 34 Mo. 509; *Roberts v. West*, 15 Ga. 122; MacNamara on Nullities and Irregularities, (14 Law Lib.) p. 3; *Norcum v. D'Oench*, 17 Mo. 117, 118, 119; *Rodgers v. Bank*, 69 Mo. 565; *Townsend v. Cox*, 45 Mo. 401.

9. Gillis was to hold the proceeds of the land in trust

for the same use he had held the land, that is, to the separate use of Mrs. Mercier. In the absence of proof to the contrary, it is presumed she got the benefit of the money. This was a ratification or confirmation, and cured every irregularity or technical breach of trust, if any. A married woman has the same capacity to waive a right growing out of a breach of trust respecting her separate estate, and to ratify what may be done irregularly by her trustee, as if she were sole. Lewin on Trusts, 471, 477, (2 Am. Ed., 24 Law Lib.); *Rodgers v. Bank*, 69 Mo. 560. Of course her heirs are also bound.

NAPTON, J.—The facts in this case are essentially the same with those in the case of *Mercier v. Fort Scott & Gulf R. R. Co.*, decided by this court in January, 1874, (54 Mo. 506.) The questions of law presented by these facts have, however, been argued with great ability, and we are called upon to reconsider our conclusions in that case. The first question presented in 1874, and now, is as to the title of Mrs. Mercier, or her trustee, Gillis, in the land sold, or claimed to be sold to defendant. It is claimed on the side of plaintiffs that this was only a life estate in Mrs. Mercier, with remainder to her children. This claim is based partly on the terms of the decree of 1847, by which Gillis, her trustee, was allowed to convert a part of her money (about $300) into land, for the benefit of herself and family, and principally upon certain rules of equity courts in regard to such decrees. The order of the court which authorized Gillis to invest the money in a home for Mrs. Mercier and family, at the same time required him to hold said land so purchased in trust for the said " Maria Louisa and her heirs," and ordered the deed to be made to the said Gillis, commissioner for the said Maria Louisa Mercier and her heirs.

For myself I concede, that in England, a settlement of the wife's property upon her, to the exclusion of the husband,

1. WIFE'S EQUITY, RULES AS TO SETTLEMENT OF: effect of settlement upon her and her heirs. always includes the children.    It is sufficient, without any references to numerous cases that have been cited, simply to copy the remarks of Sir Wm. Grant in the case of *Murray v. Ld. Elibank*, 13 Ves. Ch. 5, in order to show what has been the uniform practice of the courts of chancery in England: " With regard to the equitable right which a married woman has in this court to a provision out of her own fortune, before her husband reduces it to possession, it stands upon the peculiar doctrine of this court.    It is vain to attempt by general reasoning to ascertain the extent of that doctrine.    We must look to the practice of the court itself. It is sufficient to say, the habit of the court has always been, of itself and without any application previously made by the married woman, to direct an inquiry, when money has been carried over to her account, whether any settlement has been made; for the money is carried over subject to that inquiry; and the constant habit has been to direct a settlement, not upon the wife alone, but upon the children also.    I am not aware that she has in any case been permitted to say, she claims a settlement for herself but not for her children.    She has the option not to have any settlement made; but if a settlement is to be made, it is always directed for the benefit of the wife and the children.    When she comes to give up her right to her husband, she is examined whether she wishes any settlement. If she does not, then the money is paid to her husband.    If she desires a settlement, the settlement is upon her and her children."    We have not been referred to any case in England conflicting with this statement of Sir Wm. Grant, and I presume none is to be found.

In regard to the authorities in the United States, Judge Story, in speaking of the wife's equity, says :    " It is called the wife's equity.    But in truth it is never limited to the wife; for in all cases where a settlement is decreed, it is the invariable practice to include a provision for the issue of the marriage, through the instrumentality of the equity

of the wife. This equity will not only be administered at the instance of the wife and her trustee, but also, where the husband sues in equity for her property, at the instance of her debtor." 2 Story, § 1406. In the case of *Helms v. Franciscus*, 2 Bland Ch. 544, the reporter in his head notes states, as the substance of the chancellor's opinion, that in general the court settles only a part of the wife's fortune upon her, and that in some cases, or with the consent of her husband, the whole may be settled on her; but on examination of the opinion, which reviews the whole subject extensively, it will be found that this was said merely in reference to the conflicting claims of husband and wife, and without any regard to the children.

If then this doctrine, prevalent in England and in the old and thickly populated states of the union, was applicable to the purchase of land with the wife's money, on the far western border of Missouri, more than thirty years ago, when seventy acres or thereabouts were bought for $250, it is clear that the decree of 1847 was erroneous. But the decree was made by a court of competent jurisdiction, with all the facts before them, and upon proper appearance of Mrs. Mercier and her guardian. It is a mistake to suppose that the children are ever made parties to such proceedings. The court proceeds upon the request of the wife, or her trustee, or without any application, or in some cases at the instance of her debtor. Clancy on Rights of Married Women, book 5, ch. 2. The title was taken in conformity to this decree, and, as was held by this court in 1874, this conveyed an absolute estate in equity to Mrs. Mercier.

But it is urged that the decree of 1858 was void because Mrs. Mercier appeared by attorney. Conceding this, 2. MARRIED WOM- it appears that Gillis, her trustee, received AN'S TRUST ES- the purchase money, and in the absence of TATE: waiver of any evidence that he failed to comply with irregularity in ap- pearance. his trust, the presumption is, that Mrs. Mercier acquiesced in the sale and received the purchase money from the trustee. Would Mrs. Mercier then, if living, be allowed

by any court to get a rescission of this conveyance without a return of the purchase money? Have her heirs, since her death, any better right? We think not, and, therefore, the judgment of the circuit court is affirmed. SHERWOOD, C. J., NORTON and HENRY, JJ., concur. HOUGH, J., dissents.

HOUGH, J., DISSENTING.—It is conceded by my associates that the proceeding in the circuit court which terminated in the decree of the 24th day of September, 1847, was a proceeding for the settlement of the wife's equity, and that the court in its decree should have made provision for the children of Mrs. Mercier. The decree which was made, is as follows:

MARIA LOUISA MERCIER, BY HER }  On petition to vest trust
    NEXT FRIEND, BENOIST TROOST. }  funds in real estate.

Now at this day comes the said petitioner, by her solicitor, and files her petition herein, praying the court to make an order on William Gillis, trustee of certain funds in his hands belonging to her, and authorizing and requiring said trustee to vest a certain portion of said funds in land for a home for the said petitioner, Maria Louisa Mercier *and her family*, which said petition being by the court heard and fully understood, and it being manifest to the court that it would conduce greatly to the comfort and happiness of said petitioner, *and her family*, to vest a portion of said trust funds in land for a home for the said petitioner *and her family;* it is, therefore, ordered, adjudged and decreed, by the court here, that William Gillis, trustee of the funds of the said Maria Louisa be, and he is hereby authorized and required to vest the sum of $300 of the funds in his hands belonging to the said petitioner, in land for a home for the said petitioner *and her family,* and the court doth hereby appoint said Gillis commissioner to hold said land in trust for the said Maria Louisa *and her heirs*, and orders that the deed of conveyance for said land

so ordered to be purchased as aforesaid, be made to the said Gillis, commissioner for the said Maria Louisa Mercier *and her heirs;* and it is further ordered that said commissioner report his proceedings in the premises to the next term of this court, and this cause is continued.

It is a well recognized rule of construction, founded in reason, that the language of a decree should be construed with reference to the character of the proceeding and the nature of the relief sought. *Graham v. Railroad Co.,* 3 Wall. 704. There is no difficulty in construing the the word " family." Its usual and primary signification is " children." *Barnes v. Patch,* 8 Ves. 607 ; *Woods v. Woods,* 1 Myl. & Cr. 409 ; *MacLeroth v. Bacon,* 5 Ves. 159; *White v. White,* 30 Vt. 338 ; *Flournoy v. Johnson,* 7 B. Mon. 693 ; *Cosby v. Ferguson,* 3 J. J. Marsh. 264 ; *Hall v. Stephens,* 65 Mo. 670 ; *In re Terry's Will,* 19 Beav. 581. Such being the meaning of the word "family," and the object of the proceeding and the prayer of the petition being as stated in the decree of the court, that an investment should be made in land for a home for Maria Louisa Mercier *and her family or children,* and it being adjudged and decreed by the court that the trustee, William Gillis, should invest the sum named " *in land for a home for said petitioner and her family,*" *or children,* the conclusion is unavoidable and irresistible, that the word " heirs," as it subsequently appears in the decree, was used in the sense of "children." The word heirs may be and frequently is so construed. 2 Washburne Real Prop., (4 Ed.) side p. 274; *Williamson v. Williamson,* 18 B. Mon. 329 ; *Thurston v. Thurston,* 6 R. I. 296.

That the whole purpose of this proceeding by Mrs. Mercier, and the manifest and unquestioned intent of the court should be thwarted and overthrown by a rigid and technical construction of the word "heirs " as ordinarily used in conveyancing is contrary to every rule of interpretation applicable to the case. It is incomprehensible that the court should have adjudged and decreed that Will-

iam Gillis should invest a certain sum in land for a home for Mrs. Mercier and *her family*, and should in the very next sentence have purposely directed him to take a conveyance in such a manner as to defeat the object of the investment. The purpose of the court in using the word "heirs" could not have been to invest Mrs. Mercier with an equitable right to the fee, as it was wholly unnecessary under the statute to use that word for that purpose. The word was, doubtless, used as meaning the heirs of her body, the children then *in esse* and which might thereafter be born. That the circuit court used the word "heirs" in the sense of "family" or "children," is manifest from the language of the conveyance taken in pursuance of the decree, and approved by the court. That conveyance is as follows:

This indenture, made and entered into this 15th day of March, in the year of our Lord one thousand eight hundred and fifty, by and between Benoist Troost, Mary Ann, his wife, of the county of Jackson, and State of Missouri, of the first part, and William Gillis, as trustee for the use and benefit of Maria Louisa Mercier *and her family*, according to a decree made at the September term, 1847, of the circuit court of the county aforesaid, of the second part, witnesseth: That the said parties of the first, for and in consideration of the sum of $250 to them in hand paid by the said party of the second part, the receipt whereof is hereby acknowledged, have granted, bargained and sold, and by these presents do grant, bargain, sell and confirm unto the said William Gillis, *in trust as aforesaid*, according to the decree aforesaid, and to his successors, the following tract or parcel of land situate and being in the county of Jackson, and State of Missouri, together with all and singular the appurtenances thereto belonging, to-wit: The one-half of the northwest fractional quarter of section No. seven (7), in township No. forty-nine (49), in range No. thirty-three (33), excepting about ten acres heretofore conveyed to Silas Armstrong, supposed to contain 140 acres, be the

same more or less, the one undivided half, which in division shall be so divided that each half shall contain one-half of the bottom and one-half of the hill land in quantity, the said party of the second part, having for his part *in trust as aforesaid*, the northeast part thereof, situate east of Turkey creek, in the county and State aforesaid. To have and to hold the above granted premises to the said party of the second part in trust as aforesaid, according to the decree as aforesaid, and to his successor and successors forever. And the said parties of the first part for themselves, their heirs, executors, administrators and assigns, do covenant, with the said party of the second part and his successors *in trust as aforesaid*, to forever warrant and defend the title to the aforegranted premises against the claim or claims of all persons whomsoever. In testimony whereof, etc.

BENOIST TROOST. [SEAL.]<br>MARY A. TROOST. [SEAL.]

I am of opinion that under the judgment of the court Mrs. Mercier took an estate for life in the property settled, and the children took the remainder. *Kinney v. Mathews*, 69 Mo. 520. Such being the rights of Mrs. Mercier and her children, I am further of opinion, that the decree of the 23rd day of September, 1858, was void. The court had neither inherent nor statutory power to order a sale in a summary manner. Besides, Mrs. Mercier being a married woman she could not appear by attorney, and such an appearance cannot be construed to be either consent or request that Gillis should convey. The children were not made parties, and the decree could not bind them. It is a very significant fact, which may be properly mentioned in this connection, that in this decree of 1858, the court construes its own decree of 1847, as I have construed it. The decree is as follows:

WILLIAM GILLIS, AS TRUSTEE FOR
MARIA LOUISA MERCIER AND HER     } *Petition Ex Parte.*
FAMILY, AND MARIA LOUISA MERCIER.

.Now at this day come the petitioners aforesaid, by their attorneys, and file their petition herein, praying for the sale of certain real estate therein, whereupon the court doth find that said Gillis, as trustee aforesaid, in the month of September, 1847, had in his hands as such trustee, a certain amount of money, and that under an order of this court of September term, 1847, the sum of $300 of said sum was ordered to be invested in real estate for the benefit of the said Maria Louisa Mercier *and her family, with direc-tions to take a deed for the same in the name of said Gillis, for the benefit of the said Maria Louisa Mercier and her family,* etc., etc.

The purchasers under this decree were fully notified of the rights of these plaintiffs. Nor can the conveyance from Gillis, who held the legal title, affect the rights of the plaintiffs. His trust ceased with the death of Mrs. Mercier, and the legal title vested in the children. *Roberts v. Moseley,* 51 Mo. 285; *Baker v. Nall,* 59 Mo. 265, 268. I would be unwilling to disturb the title of any person who had purchased any portion of the property covered by the deed of the trustee, Gillis, on the faith of the decision of this court in *Mercier v. Missouri River, Fort Scott & Gulf R. R. Co.,* 54 Mo. 506, but as the defendant in this case is the original grantee in the deed made by Gillis, I think the judgment should be reversed and the cause remanded.