# JAMES L. STARK

*v.*

# FRANCIS E. COREY *et al.*

1. PARTNERSHIP — *liability of the firm for money borrowed by one of the partners.* Where the managing partner of a firm engaged in the lime business borrowed of another his check, which he directed to be made payable "to

currency," upon his promise to return the amount within an hour or so, and as soon as he should collect some lime bills due the firm, which he then had in his possession, and afterward the partnership was dissolved, it appearing by the proof, that such managing partner had been in the habit of so borrowing money from time to time to meet the firm liabilities, and that the money so borrowed was for such purpose, whether afterward applied in the partnership interest or not, — such partners were individually liable to pay it.

2. EVIDENCE — *what admissible.* So, where the bookkeeper who wrote the check entered at the time, upon the stub of the check, that it was drawn payable to the firm, it was *held,* that the stub was evidence of the fact that the credit was extended to the firm.

WRIT OF ERROR to the Superior Court of Chicago.

The opinion states the case.

Mr. JAMES L. STARK, *pro se.*

Messrs. RUNYAN & AVERY, for the defendants in error.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court:

This was an action of assumpsit for money loaned, brought to the Superior Court of Chicago, by Cory & Dwight, against F. W. Robinson & Company, a firm dealing in lime, and composed of F. W. Robinson and James L. Stark. Stark alone was served with process, and pleaded the general issue, and on the trial thereof by the court a verdict was found for the plaintiff against Stark, and judgment thereon, a motion for a new trial having been overruled.

The defendant brings the record here by writ of error, and assigns as error this finding, and also that the court admitted improper evidence.

It appears from the record that Robinson was the managing man of the concern, Stark being a lawyer in full practice; that Robinson had been in the habit of borrowing checks for the purpose of meeting the firm liabilities, and had done so of the plaintiffs. A short time before the firm dissolved, Robinson called at the office of the plaintiffs, and requested their check for an hour or so, until he could go up the river and collect

some lime bills, when he would call and pay them, but he did not.

The bookkeeper of plaintiffs testified, that Robinson had several times been in and given F. W. Robinson's checks for borrowed money; that this time he came to the office and wanted $400 for an hour, long enough to collect some little bills; the bookkeeper refused; Robinson went out and came back with Mr. Dwight, and showed Dwight lime bills that he was going up the river to collect; Dwight said "make out the check;" the bookkeeper commenced writing the stub of the check, and wrote it to F. W. Robinson & Co.; Robinson then told him to make the check to currency, which he did, and delivered it to him, being for $400; Robinson promised to return the money in two hours, was to collect the money on bills for lime; previous checks were to F. W. Robinson & Co., and were indorsed by the firm; he stated that Robinson told him to make the check to the firm, and only knows who composed the firm from hearsay.

It was admitted the firm was composed of F. W. Robinson and James L. Stark.

The defendant introduced in evidence a letter from the plaintiffs, dated September 19, five days after the money was loaned of the following purport: "F. W. Robinson, Dear Sir: We are overdrawn and short. Please hand in the $400 and oblige yours, etc." He also put in evidence a notice of the dissolution of the partnership, dated Oct. 16, 1866, and a letter from plaintiffs to defendant Stark, of the date of Oct. 18, 1866, which, among other things not pertinent to the case, is this:

"But that is not our business now: it is $400 lent your concern, the 14th last month. We can't very well see how you can avoid paying it. We are not supposed to know the use the money was put to, and don't now pretend to."

He also introduced a portion of the articles of copartnership as follows:

"When the capital stock is deemed insufficient to carry on the business, it is agreed that money shall be raised on the

28 — 45TH ILL.

note of the firm, made payable to the order of James L. Stark, Jr., who shall indorse the same; and if further security is required, it is agreed that he shall obtain it. And it is agreed that neither of said parties shall mingle his funds or property with that of the partnership, nor withdraw any funds, except as hereinafter provided."

This was all the evidence, and the Superior Court, sitting as a jury, found for the plaintiff $407 in damages.

The evidence admitted by the court, to which the defendant below objected, was that of the bookkeeper, when he stated that he commenced writing on the stub of the check, and wrote it to F. W. Robinson & Co., and gave the form in which it was done.

The plaintiff in error contends this was improper, as there was no evidence that Robinson or the firm knew of this stub, and it could not be admitted to prove an indebtedness against a person not cognizant of it.

There is no proof on the subject, but from our own experience we know it is a very general custom of those drawing checks to make a memorandum on the stub or margin, which is left in the check book, which every merchant and general dealer keeps, of the amount, date of each check, and in whose favor drawn, and such an entry, in connection with the testimony here offered, would be evidence of the transaction.

The question is, to whom was the credit given? The firm of Robinson & Co. was managed by Robinson, and they had been in the habit of borrowing checks of the defendants in error to relieve an immediate and pressing necessity, which every business man almost is under, at some moment, requiring prompt means. It is not a transaction embraced within the article of copartnership introduced by the plaintiff in error, nor has it any thing to do with that. The borrowing was on a sudden emergency, to be met at once, and to be returned when some lime bills could be collected, which were expected to be collected in an hour or so. It is very certain the defendants in error lent the check on the credit of the firm, and as they had been

in the habit of doing, and the testimony of the bookkeeper in regard to the stub of the check, was proper, as part of the *res gestæ*, as a fact which transpired at the time, giving character to the transaction, and there is nothing in the article of copartnership inhibiting this kind of borrowing. The letter addressed to Robinson alone, has no particular weight, as Robinson was the managing man of the concern, and an order for lime would, in all probability, be addressed to him, as the plaintiff in error was engaged in another and different calling, and mingling but little, if at all, in any of the business of the concern.

We think the court did not err in finding this check was borrowed on the credit of the firm, and plaintiff in error, being one of the firm, ought to pay it, though his partner may not have appropriated the proceeds to the business of the firm.

The judgment is affirmed.

*Judgment affirmed.*