STEPHEN MONROE

v.

EDGAR M. SNOW ET AL.

*Agency—Sale of Real Estate—Commission—Recovery of—Change in Price—Entry in Cipher—Evidence—Introduction of Books—*Res Gestæ*— Bill of Exceptions.*

1. A bill of exceptions should clearly show the facts in a given case, and the exceptions taken, and if defective through ambiguity, uncertainty or omission, must be construed most strongly against the party who prepared it.

2. In an action by real estate brokers for the recovery of commissions

the contention being as to whether the price of the land in question had been raised by its owner, this court declines, in view of the evidence, to interfere with the verdict for the plaintiffs.

[Opinion filed May 29, 1889.]

APPEAL from the Superior Court of Cook County; the Hon. JOHN P. ALTGELD, Judge, presiding.

Messrs. NELSON MONROE and LEONARD SWETT, for appellant.

Messrs. ABBOTT, OLIVER & SHOWALTER, for appellees.

GARY, J.   This was an action by the appellees to recover commissions as real estate brokers, on a sale made by them of the property of the appellant.   The sale was made February 27, 1886, for $90,000.   There is no contest about the fact that the sale was made, and that the purchaser was ready to complete it by paying the purchase money and accepting a conveyance.

It was admitted by appellant as a witness on the trial that at one time the appellees were his agents for the sale of the property at that price, if they could get it, and in a letter of March 3, 1886, in reply to a telegram from them informing him of the sale, he says: " I told you in the fall I would take that price." It is not certain, upon his version of what took place between the parties, that this expression does not refer to the contents of letters written by him in December, 1885. There were two points on which there was a direct conflict between the parties; first, whether the appellant was in the office of the appellees October 31, 1885; and second, whether, February 13, 1886, the appellant raised the price to $100,000. In reality the only alleged error for this court to consider arises upon the evidence as to the first point.   As to all the conflict of evidence upon the other point, the verdict of the jury is an end of the controversy, and the affidavits as to newly discovered testimony, so far as material, only state that Snow, when negotiating the sale, said that at the last interview between the parties, which is fixed by them as February

13, 1886, the appellant had given him verbal authority to make the sale, and that in reply to a suggestion by the purchaser to telegraph appellant, Snow said, "I tell you we have full authority to make this sale, and if we should telegraph to Monroe, he might change his mind." This statement in the affidavit as to verbal authority given February 13, 1886, is not irreconcilable, if it is at all inconsistent, with the version by the appellees of that interview.

As they narrate the conversation it was conducted upon the assumption that such authority was then existing and amounted to a ratification or repetition of it. And the supposed possibility or probability that if telegraphed to, the appellant might change his mind, only shows that the object of the appellees, in conducting a real estate brokerage business, was not benevolent, but the selfish one of earning commissions upon terms previously agreed upon. Whether such evidence would have any influence with another jury can only be a matter of conjecture; it certainly is not evidence of that conclusive character, to let in which, new trials are granted. Laird v. Warren, 92 Ill. 204.

And now as to the supposed error on the admission of evidence: First. The facts and the exceptions must be clearly shown by the bill of exceptions. The rule laid down in Rogers v. Hall, 3 Scam. 5, that " the bill of exceptions is not to be considered as a writing of the judge but is to be esteemed as a pleading of the party alleging the exceptions, and if liable to the charge of ambiguity, uncertainty or omission, it ought, like any other pleading, to be construed most strongly against the party who prepared it," has never been departed from, but often reiterated, in terms or effect, in subsequent cases, both civil and criminal. Myers v. People, 26 Ill. 173; Lee v. Mound Station, 118 Ill. 304; Johnson v. Glover, 19 Ill. App. 585, are a few among many. This record shows that on the trial Snow testified that in the latter part of December, 1884, the appellant called at the office of the appellees, and asked them to sell the property ; that the appellees entered it upon a book which he called by the various names of " record book" " book of original entry " and " sales record

Monroe v. Snow.

book." That entry was read to the jury without objection. It contained a description of the property; price $100,000. And in parenthesis, $95,000 in a private mark of the appellees· The witness then said, "that entry was posted into our sales record book." Then follows:

"Question. Examine this book if you please and identify the place" (handing the book to the witness). To which the defendant then and there objected, which objection was overruled; to which ruling of the court the defendant then and there excepted.

"Question. That is your original entry, you say, in this blotter (referring to the original book)?

"Answer. Yes, sir."

Now upon this exception, it is quite uncertain what book was handed to the witness, whether the same one that had been read without objection or another; and if it was another it seems to have been immediately abandoned, and nothing done by the appellees under the ruling to which exception was taken.

The next exception appears in this way. Snow testified that the appellant came again to the office of the appellees, October 31, 1885, and directed them to change the price from $95,000 to $90,000; that the appellees entered that change upon their "sales record book," and then follows:

"Question. Is that the book?

"Answer. Yes, sir (handing the same to the witness).

"Question. Will you turn to the place where you entered it?

"Answer. I may say that this book is frequently used as a book of original entry to which Mr. Evans refers. (Note the record shows that Mr. Evans was one of the counsel of appellees.)

"The Court: He can refer to it to refresh his memory."

Defendant's counsel thereupon excepted to the ruling of the court.

"Question. From anything you see there can you testify the date of his call?

"Answer. Yes, sir.

"Question. State the date that he called.

"Answer.   From a memorandum which I made here which I dated, I find it was on the 31st day of October, 1885.

"Question.   State in regard to the price at that time, if you have anything there.

"Answer.   I have here a memorandum stating that at the time the price named was $90,000, which he directed us to sell the property for.

"Question.   State when that memorandum was made.

"Answer.   The memorandum was made on the 31st day of October, 1885.

"Question.   What is the character of that memorandum?

"Answer.   It is in private marks, sir.

"Question.   In regard to it being original, or secondary or what?

"Answer.   It is the original entry."

Nothing follows qualifying what is recited. Now, if the witness had stated that he remembered the interview, but that either the date or the new price had been forgotten, and that he made a note of these particulars at the time, which he then knew to be true, the ruling of the court would have been technically correct. 1 Gr. Ev., Sec. 437; Hayden v. Hoxie, 27 Ill. App. 533.

The witness, however, had not so stated, nor was the book used for the purpose for which the court ruled that it was admissible. He was at once questioned, without objection, not as to what he remembered, with or without the aid of the book, but as to what the book itself showed, which, unless the book was admissible on the rule of *res gestœ*, would have been erroneous, if objected to, but being permitted to pass without exception, all objection is waived.

Subsequently, on the cross-examination of the same witness, the appellant offered the book itself in evidence. It was then incorrectly assumed by both court and counsel that it was already in, and it rather vaguely appears that it was so used by the appellant.

In the further progress of the case, the appellant put in a postal card, addressed to the appellees, and on the other side stating that "some time having elapsed since we were ad-

vised as to the price and terms of the property hereinafter mentioned, will you kindly insert below any change you desire to make, and return this to us," signed by the appellees.

This was dated February, 1886, and stated the price of the property at $100,000. The appellant testified that Snow wrote and gave this card to him at the interview of February 13, 1886. It was very satisfactorily proved that in fact it was written, under general instructions embracing two or three thousand cards, by a clerk of the appellees, after February 22, 1886. On the card were some characters which seemed to be the figures 13112, but which in the handwriting of that clerk were the letter B, and the figures 112, and which were interpreted by testimony, as being a reference to the book in which the $90,000 in private marks was.

This card was put in by the appellant as corroborating the appellant and contradicting the appellees, that February 13, 1886, the price was, or was not, changed from $90,000 to $100,000. It was therefore competent for appellees to show such circumstances, if any there were, as took from the card that appearance of contradiction of their testimony. Merely showing that the account given by the appellant was incorrect, was not enough for that purpose, for the card would still remain as one going out, in the course of business, from them, and therefore evidence against them that the price at which they might sell was $100,000. To explain away the apparent contradiction, the clerk testified that he took his figures from the figures on the book, and at that time he did not know the meaning of the private marks. The use that the appellant made of this card, rendered it competent for the appellees to show that the clerk made the card, under general instructions applicable to thousands, from such data as he understood, and that the same book then contained private instructions from the appellant, according with their testimony on the trial, and of which no notice was taken by the clerk in writing the card. If, therefore, at the time the book first appeared in the case, an error in regard to it had been committed, and an exception saved, the later phase of the case by which the same evidence became competent in rebut-

tal would have cured the error. But as *res gestæ*, things done, the book was original competent evidence. Whether Snow told the true story about it, was a question of fact for the jury; but in all questions as to the competency of evidence, that it may be true, must, in the nature of things, be assumed.

It may be incompetent on the ground that it is not of the character least likely to be untrue, as by parol of the contents of writing, but when the best that can be, of the matter to be shown, is offered, it is no objection to its competency that the witness may tell an untrue story. Now if, in fact, the appellant did, October 31, 1885, tell Snow to sell the property for $90,000, and if Snow then had before him a book in which the property had been before entered under former instructions from the appellant, and Snow then in the presence of the appellant put into the book a new date, and a new minimum price, though in cipher, it is a reasonable, if not a necessary, inference, that such entry was made in the natural course of business, as a prudent precaution against forgetfulness of either the price or the date of the instructions, and as to price, in cipher, that persons who had no right to know, might not know, the lowest price for which the owner would sell. It is in principle the same as Stark v. Corey, 45 Ill. 431, " a fact which transpired at the time, giving character to the transaction," by the showing which the book made, if true, to one who understood it, that October 31, 1885, the appellant authorized the appellees to sell his property at the minimum price of $90,000, as in the case cited, the check stub, if true, showed that the check was issued on account of the firm named on it. There is no error in the record.

*Judgment affirmed.*

MORAN, J. I do not concur in so much of the opinion of Mr. Justice Gary as regards *res gestæ.*