Exr's. of White *v.* White and Trustee.

THE EXECUTORS OF PHINEAS WHITE *v.* WILLIAM W. WHITE
AND TRUSTEE, CHARLES K. FIELD.

*Guaranty. Trust Funds. Trustee Process.*

A. executed to B. a guaranty of the payment of a note held by the latter against C., which had been given to B. more than a year previous to the date of the guaranty. C. having failed to pay the note at maturity, it was paid by A's executors to B, but there was no evidence to show that C. had ever requested either A. to execute the guaranty, or A's executors to pay the note; neither was any consideration expressed in the guaranty; *Held,* in assumpsit against C. by A's executors, that they could not recover the amount so paid by them.

*Held* also, that such a request from C. to A. to execute the guaranty, or to the latter's executors to pay the note, as was necessary to support the action, could not be inferred merely from the finding of the county court that the guaranty was executed by A. for the benefit of C.

A testator bequeathed a sum of money to his son "for the support of himself and family and for no other purpose," and the testator's executors paid this legacy to the son's attorney. *Held* that this money constituted a trust fund for the purposes named in the will, and that it could not be attached on the son's debts, by the trustee process, while in the attorney's hands.

*Held* also, that if the construction of the will in this respect would have been altered by the fact that the legatee had no family, still this fact should be shown by the party seeking to hold the fund; and that if there were no evidence on that point, the court would decide the case upon the facts as assumed in the will, and presume that he had a family.

But even if a legacy were made to one, for his own support, and for no other purpose, a trust fund would be thereby created which could not be diverted from its purpose by attachment or trustee process upon the debts of the legatee. BENNETT, J.

ASSUMPSIT. Plea, the general issue, and trial by the court, at the September Term, 1855,—UNDERWOOD, J., presiding.

The plaintiff read in evidence a note of three hundred and fifty dollars, signed by the defendant, dated July 1st, 1840, and payable to Wm. H. Williams on demand, and the following guaranty, dated Aug. 9th, 1841, and signed by the testator, who was the father of the defendant.

" Whereas my son-in-law, Rev. Wm. H. Williams, holds a note against my son, Wm. W. White, dated July 1st, 1840, for three

hundred and fifty dollars with the interest, for money advanced to him ; I do hereby promise and engage to make good the payment of said note to the said Williams, should my son William fail to pay the same."

It appeared on trial that this guaranty was given for the benefi of the defendant ; and that it was presented before the commissioners on Phineas White's estate and allowed by them, and that the plaintiffs had paid to Williams the amount of the note mentioned therein.

The county court upon these facts rendered judgment for the plaintiffs for the amount of the said note, to which the defendant excepted.

The question of the liability of the trustee was referred to a commissioner who reported the following facts ;

Phineas White died on the 9th of August, 1847, and his will, which had been duly probated, contained a bequest to the defendant in the following words : " I will and bequeath to my son, William Wallace White, to whom and for whom I have paid and advanced several thousand dollars, the sum of fifteen hundred dollars for the support of himself and family and for no other purpose ; to be paid and advanced by my executors within five years after my decease, or so soon as the same can be realized from the sale of my real estate, after paying debts and preceding legacies."

In March, 1853, a suit was commenced in the name of the probate court for the district of Westminster, upon the plaintiffs' bond, as executors of Phineas White's will, to recover what the defendant was entitled to receive by virtue of the legacy above set forth. The suit on the bond was commenced and carried on by Charles K. Field, the trustee in the present suit, as the agent and attorney of the defendant, and on the 7th of September, 1853, the plaintiffs settled the suit against them by paying Field eight hundred and sixty-four dollars and sixty cents, being the sum due to the defendant under the aforesaid legacy, and immediately afterwards brought this suit.

The trustee insisted before the commissioner as matter of law, that the plaintiffs had waived their right to recover, by not offsetting their claims against the legacy of the principal debtor, and that the money paid by the plaintiffs to the trustee was by the

terms of the will a *trust* fund and not subject to the trustee process.

But the commissioner decided that it was no part of his duty to pass upon these questions of law, and reported that the trustee had in his hands at the time of the service of the writ and at the date of his report, belonging to the defendant, the sum which had been paid to him by the plaintiffs as aforesaid.

The county court rendered judgment for the plaintiff against the defendant, and *pro forma*, that the trustee was chargeable for the amount reported in his hands by the commissioner.

Exceptions by the defendant and trustee respectively.

——— ———, for the defendant and trustee.

The guaranty is an independent engagement, *Gardner* v. *Nutting*, 5 Green. 140 ; and not like the case where one was made at the time, and formed a part of the consideration of the original promise. *Alexander* v. *Kane*, 1 Mees. & Wels. 50 ; *Beebe* v. *Moore*, 3 McLean, 387 ; and, if made without request of the debtor, has no consideration as to him. 2 Barr. 30 ; U. S. Dig. of 1847, page 291, sec. 13. The request must be averred and proved. 1 Smith's Leading cases, 135 (n), for a mere voluntary courtesy will not uphold an assumpsit, *id.* 135 ; nor is it sufficient that the defendant was benefited by it ; *Exall* v. *Partridge*, 8 T. R. 310 There was no evidence of such request, or that the defendant knew of the guaranty until after the testator's death, and the allowance of the claim by the commissioner.

But supposing there had been a request, there is no evidence that the defendant was notified to defend the matter before the commissioners, and therefore their adjudication is not conclusive upon the defendant ; *Castleton* v. *Miner*, 8 Vt. 209 ; and such being the case, the plaintiffs must show that the adjudication could not have been resisted.

There was a trust created in Wm. W. White for the purposes specified. Hill on Trustees, 65, 66 ; *Woods* v. *Woods*, 1 Myl. & Craig 401 ; *Crocket* v. *Crocket*, 1 Hare 451 ; *Raikes* v. *Ward*, *id.* 445 ; *Broad* v. *Bevan*, 1 Russell 511 (n) ; *Hadow* v. *Hadow*, 9 Simons 438 ; *Tubber* v. *Tubber*, 9 Sim. 503 ; *In re Harris*, 8 Eng. Law & Eq. 537 ; *Briggs* v. *Penny*, id. 231 ; and this although the donee is entitled to a partial beneficial interest as an object of

the testator's bounty. Hill on Trustees; *Woods* v. *Woods*; *Crockett* v. *Crockett, supra*; and although the payment must be made to the defendant and not to his wife and children; *Robinson* v. *Tickell*, 8 Ves. 142. And this payment when there is no attorney, is to be made at common law to the legatees in the country in which they reside. 1 *P. Williams*, 696; 6 Bouvier's Bacon's Abridg. 306.

This specific trust prevents its attachment in the hands of the agent or attorney. *Townsley* v. *Barber*, 27 Vt. 417; neither if the trust failed could it be reached, for it would then revert. *King* v. *Denison*, 1 Ves. & B. 272.

*P. T. Washburn*, for the plaintiffs.

It does not appear that at the time of, or since, the testator's decease, the principal debtor had, or has had any "family" within the meaning of the bequest.

It is the duty of the excepting party to show by sufficient facts upon the record, that the court below erred, and unless this can be done, the judgment below must be affirmed. If that judgment *may* be right upon the facts as stated, it must here be presumed right. Hence as the case does not show that Wm. W. White has, or had any family, the only question for examination on this part of the case is *whether, if he had no family*, the money *bequeathed, became absolutely his property*, for if so, there is no error. In this view the bequest is to be construed as though it read thus: "*I will and bequeath to my son William Wallace White the sum of one thousand five hundred dollars for the support of himself* * * * *and for no other purpose.*"

This gives him an absolute estate. The trustee and the *cestui que trust* are the same person and thereby the legal and equitable estate are united, and the equitable estate is extinguished. *Webb* v. *Kelly*, 9 Sim. 470 (16 Cond. Ch. R.); *Cape* v. *Cape*, 2 Y. & Col. (Ex.) 543; *Hammond* v. *Neame*, 1 Swans. 36; *Hadow* v. *Hadow*, 9 Sim 439; *Gilbert* v. *Bennett*, Sim. 372; *Wardle* v. *Saxton*, 9 Sim. 524; *Andrews* v. *Partington*, 3 Bro. C. C. 60; *Berkley* v. *Swinburne*, 6 Sim. 613; *Brown* v. *Paull*, 1 Eng. Law and Eq. 133; 6 Sim. 613; 9 Sim. 439; *Cooper* v. *Thornton*, 3 Bro. Ch. C. 96, 186; *Robinson* v. *Tickell*, 8 Ves. 142; *Crockett* v. *Crockett*, 2 Phil. 553.

It follows as a necessary incident to a gift, *subject to a charge,* that *if the* charge *fail,* the gift becomes absolute. *Cooper* v. *Thornton,* 3 Bro. C. C. 96, 186 ; *Robinson* v. *Tickell,* 8 Ves. 142 ; *Crockett* v. *Crockett,* 2 Phil. 553 ; *Jackson.* v. *Henlock,* Ambler 487 ; *King* v. *Denison,* 1 V. & B. 260 ; *Cooke* v. *Stationers' Co.* 3 M. & K. 266 ; Hill on Trustees, 141 ; and since a will as to personalty is to be construed only with reference to the time of the decease of the testator, and none can take under general words, except those then living, it must appear in order to convert the bequest in question into a trust, that the principal debtor had then a family to which the trust might apply.

The opinion of the court was delivered by

BENNETT, J.   The first question in the case relates to the liability of the principal debtor for the moneys paid on the guaranty by the executors of the testator to Wm. W. Williams.   It seems, that on the 1st of July, 1840, Wm. W. White gave his note to William H. Willams, a brother-in-law, for three hundred and fifty dollars, payable on demand ; and on the 9th of August, 1841, Phineas White, the father, gave his guaranty to see the note paid, if his son did not pay it.   No consideration is expressed in the guaranty for the undertaking, and the guaranty was not given until more than a year after the note was given.   All that the county court find, except the payment of the note by the executors of Judge White, is that the guaranty was given by Judge White, in his lifetime, for the benefit of his son.   No evidence is detailed, tending to prove that the guaranty was given by Judge White to his son-in-law, at the request of his son, or that the money was paid at the request of the son, or that he in any way sanctioned the proceeding.   His request can not be inferred simply from the fact that the guaranty was signed for his benefit.   The case should show something further.

The exceptions say, " upon these facts the court gave judgment for the plaintiff."

The question then is fairly raised, do the facts detailed in the bill of exceptions warrant in law a recovery for the moneys paid on the guaranty ? and for the reasons we have assigned, we think they do not.

The judgment against the principal debtor is reversed.

Exr's. of White *v*. White and Trustee.

The more important question in the case is in relation to the liability of the trustee. The moneys were paid into the hands of the supposed trustee as the agent and attorney of Wm. W. White, and if these moneys, when paid to White, would become his property *absolutely*, then this process would probably lie, but if they would constitute but a trust fund, then it will be otherwise.

The will gives to Wm. W. White, the son of the testator, *"one thousand five hundred dollars for the support of himself and family, and for no other purpose."* The word "family" is a noun of multitude, and is capable of various significations, according to the context; and in the present case it would no doubt include the wife and children of the testator's son. The will should be carried out according to the intent of the testator. And we can have no possible doubt that it was his object to create the one thousand five hundred dollars in the hands of his son, a *trust fund*, for the use specified in the will. The testator not only used *affirmative words*, appropriate to create a trust fund, but he saw fit at the same time, to add a negative. The words are: "for the support of himself and family, *and for no other purpose."* To hold that under this will the son took the one thousand five hundred dollars absolutely as his own, and not as a trust fund, would be to pervert the use of language, and the obvious intent of the testator. I am aware of no case that will warrant such a construction. In *Raikes* v. *Ward*, (1842) 1 Hare 445, the devise was to the wife: "*to the intent that she might dispose of the same for the benefit of herself and our children, in such manner as she may deem most advantageous.*" It was held by the vice chancellor, that the wife took only a *trust interest.*

In *Crockett* v. *Crockett*, 1 Hare 451, (1842), the property was to be "at the disposal of the testator's wife for the benefit of herself and children." And it was there held she only took a trust interest, and that the children took an interest in the property of the testator at the time of the testator's death.

It is said in argument, that in giving effect to this item in the testator's will, under the present bill of exceptions, we are to assume that the son had no family, and that the decision should be the same as if the devise had been to the son for his support, and for no other purpose.

We apprehend we are to decide the case upon the facts assumed in the will, and if the construction of the will would be altered in case there was *no family*, this fact should come from the other side, and should affirmatively appear in the bill of exceptions.

But for one, I should apprehend, if a legacy is given to a son for his support, and for no other purpose, a trust would be created, and that the property would be held subject to the trust.

Judgment as to the trustee is also reversed, with costs.