THE STATE OF MICHIGAN V. THE ESTATE OF BELA M. DUNBAR.

| | |
|---|---|
| 99 | 99 |
| 121 | 698 |
| 99 | 99 |
| 156 | 402 |

*Guardian and ward—Payment of debts—Jurisdiction of probate court—Statute of limitations—Insane persons—Will— Liability of legacy to debts of legatee.*

1. How. Stat. § 6322, which provides for the payment, by the guardian of a minor or of any other person, upon the approval of the judge of probate, of all just debts due from the ward, and all expenses incurred by any county in his care, support, or maintenance, was intended to give to the probate court some supervisory control over the acts of the guardian in paying debts of his ward, and the more reasonable construction is that such approval can be asked for by any person interested in having the question of such payment passed upon by the probate judge.

2. It is very clear that the section cited authorizes the guardian to ask the probate judge to pass upon the question of whether a debt shall be paid, and, where the guardian joins with the creditor in a stipulation to submit the question to the probate court, he cannot question the jurisdiction of the court on an appeal from its decision.

3. A claim by the State against the estate of one admitted to the asylum as an indigent insane person, for expenses incurred in his care, support, or maintenance, is subject to the operation of the statute of limitations.

4. The certificate of a probate judge, made pursuant to section 1934 of the Compiled Laws of 1871, after the investigation provided for by said section, that satisfactory proof has been adduced showing that the person therein named is insane, and that his estate is insufficient to support him and his family, or, if he has no family, himself, under the visitation of insanity, is all that is required to admit said person into the insane asylum, to be supported at the expense of the county to which he belongs, etc.; and the officers of the asylum are bound to act upon such certificate, which is an original document, and is not invalidated by the failure of the probate judge to enter the proper order in the journal of the probate court, as required by said section; citing *Hickey v. Hinsdale*, 8 Mich. 267; *Blanchard v. DeGraff*, 60 Id. 111.

5. A fund in the hands of the guardian of an insane person,
   arising from the payment to the guardian of a legacy be-
   queathed to the ward under a will which directs that it shall
   be received by the legatee free and clear from his debts, con-
   tracts, anticipations, and alienations, and of all liability for or
   by reason of the same, and from all levies, attachments, and
   executions, may be subjected to the payment of a claim by
   the State against the estate of the ward for expenses there-
   after incurred in the care, support, or maintenance of the
   ward in the asylum as an indigent insane person.

Error to Delta.    (Stone, J.)    Argued November 2, 1893.
Decided February 20, 1894.

Appeal from the allowance of a claim in probate court.
Defendant brings error.    Modified and affirmed.    The facts
are stated in the opinion.

*J. F. Carey,* for appellant.

*A. A. Ellis,* Attorney General, for claimant.

MONTGOMERY, J.   The State presented to the probate
court for allowance a claim against the estate of Bela M.
Dunbar, an insane person, the claim being for moneys
expended in caring for Mr. Dunbar in the asylum for the
insane.   The claim was allowed in probate court, and an
appeal was taken to the circuit, where the claim of the
State was again allowed, and the case is brought here for
review on the special findings made by the circuit judge,
the question presented being whether the findings support
the judgment.

The findings show that the ward, Bela M. Dunbar, was
committed to the Asylum for the Insane at Kalamazoo in
1868, and that from August, 1869, to January 1, 1879, he
was maintained at the expense of the county of Delta, and
that from January 1, 1879, till March 31, 1892, he was
maintained at the asylums of the State at the expense of
the State.   Since March 31, 1892, the expense of his

maintenance has been borne by his estate. The findings further show that the expense of maintaining the ward by the State from June 3, 1885, until March 31, 1892, amounted to $1,537.07.[1] It is conceded, however, that there was an error in computation, which should, in any event, be corrected. The circuit judge found that the State was entitled to have this sum allowed against the estate of the ward in the hands of the guardian.

Four points are urged on this appeal:

1. That the probate court had no jurisdiction of the proceedings; that there is no authority of law for presenting claims against the estate of a ward under guardianship to the probate court; that the remedy is by action against the ward.

2. That the portion of the State's claim which accrued prior to December 5, 1886, is barred by the general statute of limitations.[2]

3. That the proceedings adjudging Bela M. Dunbar insane, and adjudicating that he was an indigent person, are irregular.

4. That the only fund in the estate of Dunbar is a fund received under a devise by will of his uncle, and that by the terms of the will this fund is not subject to the payment of this claim.

We will consider the questions in the order presented.

1. Section 6322, How. Stat., provides that—

"Every guardian appointed under the provisions of this chapter, whether for a minor or any other person, shall pay all just debts due from the ward, and all expenses incurred by any county in the care, support, or maintenance of such ward, upon the approval of the judge of probate, out of his personal estate and the income of his real estate, if sufficient, and, if not, then out of his real estate, upon obtaining license for the sale thereof and disposing of the same in the manner provided by law."

This section was plainly intended to give to the probate

---

[1] The State abandoned that part of its claim accruing prior to this period, the statute upon which the same is founded (3 How. Stat. § 1930d1) having become operative upon the date first named.
[2] The claim was filed December 5, 1892.

court some supervisory control over the acts of the guardian in paying debts of his ward.   The question is whether this direction or approval can be invoked only by the guardian, or whether any person interested in having the action of the probate judge upon the question may ask it. We think the latter construction the more reasonable.   But in this case the guardian has himself joined in asking the advice of the probate court.   A stipulation between the parties contains the following:

"'All the parties interested in this hearing have been duly notified, or waived notice, and the question as to the liability of the said estate to the county of Delta, and the liability of said estate of Bela M. Dunbar to the State of Michigan, shall be heard before the probate court of the county of Delta on the 13th day of March, 1893, at 1:30 o'clock P. M., without further notice to either party."

It is very clear that the section in question authorizes the guardian to ask a probate judge to pass upon the question of whether a debt should be paid, and by this stipulation he has submitted that question to the court.

2. We think the statute of limitations must be held to apply to this case.   How. Stat. § 8732, reads:

" The limitations hereinbefore prescribed for the commencement of actions shall apply to the same actions when brought in the name of the people of this State, or in the name of any officer or otherwise for the benefit of the State, in the same manner as to actions brought by individuals."

This reduces the claim to $1,055.35, and interest from March 31, 1892.

3. As to the question of whether the ward was properly admitted to the asylum, it stands admitted in the record that he is now, and has been since 1868, insane; and that on the first day of January, 1879, said Bela M. Dunbar became a State charge by virtue of the laws of this State, and from January 1, 1879, till March 31, 1892, was main-

tained at the expense of the State. This would seem to preclude an inquiry into the question of the regularity of the order committing Dunbar to the asylum. We would have more hesitancy in so construing the stipulation if it were not apparent that the question sought to be raised is entirely technical, and devoid of merit. The statute in force when the order for his admission to the asylum was made was section 1934 of the Compiled Laws of 1871:

" When a person in indigent circumstances, and not a pauper, becomes insane, application may be made in his behalf to the probate judge of the county where he resides; and said probate judge shall call two respectable physicians and other credible witnesses, and also immediately notify the prosecuting attorney of his county of the time and place of meeting, whose duty it shall be to attend the examination, and act in behalf of said county; and said probate judge shall fully investigate the facts in the case, and either with or without the verdict of a jury, at his discretion, as to question of insanity, shall decide the case as to his indigence; and if the probate judge certifies that satisfactory proof has been adduced showing him insane, and his estate is insufficient to support him and his family, or, if he has no family, himself, under the visitation of insanity, on his certificate, under the seal. of the probate court of said county, he shall be admitted into the asylum, and supported there at the expense of the county to which he belongs, until he shall be restored to soundness of mind, if effected in two years, and until removed by order of the board of supervisors of such county. The probate judge, in such case, shall have power to compel the attendance of witnesses and jurors, and shall file the certificates of the physicians, taken under oath, and other papers, in his office, and enter the proper order in the journal of the probate court in his office."

In this case there was such a certificate as is required by the terms of this act, and the authorities of the asylum have since acted upon it. It appears that the order mentioned in the section was not entered on the journal by the judge. But the entry of the order is not a prerequisite to the admission of the insane person to the asylum.

The certificate is all that is required, and the officers of the asylum are bound to act upon this. This certificate is not a copy of the order, but an original document, and the failure of the probate judge thereafter to enter the order in the journal does not invalidate it. See *Hickey v. Hinsdale*, 8 Mich. 267; *Blanchard v. DeGraff*, 60 Id. 111. ·

4. The point most insisted upon is that the fund in the hands of the guardian is not subject to the payment of the claim. The fund was received from the executors of the will of the ward's uncle. At just what time it came into the hands of the guardian does not appear. The contention of the guardian is that the legacies were to be paid to the legatees themselves, for their own personal benefit, and not to their creditors or alienees, and that the same were to be received free and clear of alienation, anticipation, debts, contracts, and engagements. The following is quoted from the will:

" I desire to guard against improvidence of females as well as males; to prevent alienation, anticipation, and diversion from beneficiaries to their creditors. To accomplish these ends, I direct that income and principal also shall be received by all beneficiaries free and clear of their debts, contracts, anticipations, and alienations, and of all liability for or by reason of the same, and from all levies, attachments, and executions. Payments must be made either directly to the beneficiaries, or upon their respective orders, signed not more than three months beforehand."

It is contended by the defendant that the inheritance was not only beyond the reach of creditors while in the hands of trustees, but that it also came to the hands of the legatee free from all liability for or by reason of the claims of creditors.[1] We do not think the language opon

·¹ Counsel cited, in support of this contention, *Nichols v. Eaton*, 91 U. S. 716; *Waldo v. Cummings*, 45 Ill. 421; *Steib v. Whitehead*, 111 Id. 247; *Emerson v. Marks*, 24 Ill. App. 642; *Roberts v. Stevens*, 84 Me. 325; *Appeal of Hendricks*, 133 Penn St. 51; *Fisher v. Taylor*, 2 Rawle, 33; *Braman v. Stiles*, ·2 Pick. 460; *Hill v. McRae*, 27 Ala. 175; *Pope v. Elliott*, 8 B. Mon. 56; *Vaux v. Parke*,

to the construction that, after the fund had in fact come into the hands of the legatee, it should not be liable for his subsequent engagements. If the provision be given full scope, it follows that Bela M. Dunbar has been entitled to receive moneys sufficient to pay his charges at the asylum. Being himself incompetent to receive them, they have been paid to his guardian. Is it possible that the will must be given such a construction that this property shall be accumulated, while he himself is supported by public charity? If so, it is because he has, by a visitation of the affliction under which he is suffering, been prevented from himself receiving and disbursing the money. That he would have been entitled to receive the money, and to apply it to his support, if sane, is unquestionable. The fact that he was not able to do so because of his insanity does not entitle the representatives of the estate to accumulate the fund for others, and divert it from the purpose intended. The circuit judge reached this conclusion, and we think he was right.

Except as herein modified, the order of the circuit court will stand affirmed, and the claim will be allowed against the estate at the sum of $1,055.35, and interest from March 31, 1892, at 6 per cent.

The other Justices concurred.

7 Watts & S. 19; *Shankland's Appeal*, 47 Penn. St. 113; *Perkins v. Dickinson*, 3 Grat. 335; *White v. White*, 30 Vt. 338; *Holdship v. Patterson*, 7 Watts, 547; *Campbell v. Foster*, 35 N. Y. 361.