(25 App. Div. 153.)

SCHENCK v. BARNES et al.

(Supreme Court, Appellate Division, Second Department. January 21, 1898.)

TRUST FUND—GRANTOR A BENEFICIARY—LIABILITY FOR JUDGMENT.
    Where an owner of real property conveys the same to a trustee, to receive and apply the rents and profits to the use of the grantor for life, with remainder over, and with a power of sale in the trustee, an action will lie on behalf of a judgment creditor of the grantor, after execution is returned unsatisfied, to subject the debtor's interest under the trust to the plaintiff's judgment. 2 Rev. St. p. 174, §§ 38, 39; Code Civ. Proc. §§ 1871, 1879.

Appeal from special term.

Action by Belle C. Schenck against William D. Barnes and Henry W. Taft, trustee. From a judgment sustaining a demurrer to the complaint, plaintiff appeals. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

John W. Hutchinson, Jr. (Walter S. Newhouse on brief), for appellant.

Robert W. Candler, for respondents.

CULLEN, J.　The complaint states that on October 11, 1893, the defendant Barnes conveyed certain real property in the city of New York to the defendant Taft, in trust, reserving to himself the beneficial interest in the said property for life, "subject to the necessary expenses of the said trustee, with remainder over, and with full power of sale in said trustee," etc., and that the defendant Taft was at the time of the commencement of the action in possession of the property. It then alleges the recovery by the plaintiff, on the 18th of November, 1896, of a judgment against the defendant Barnes for over $7,000, the docket of the judgment, issue of execution thereon, and return of the execution unsatisfied. Judgment is asked that the court determine the amount of interest of defendant Barnes reserved to himself in and to the said trust fund, that it order such interest to be sold, and the proceeds to be applied to the satisfaction of plaintiff's judgment. To this complaint the defendants demurred, claiming that it stated no cause of action. From an interlocutory judgment sustaining the demurrer this appeal is taken.

The complaint does not clearly set forth the nature and character of the trust upon which the property was conveyed,—whether it was an active trust, under which the trustee was required to collect the rents and profits and apply them to the use of the grantor, or a passive trust, under which the grantor was to be allowed to retain possession of the trust property during his life. It would have been far more satisfactory had either the trust deed been incorporated in the complaint or its legal effect set forth in detail. But in the argument of the case both counsel have treated the trust as being in fact one to collect rents and profits and apply them to the use of the settlor of the trust, and we shall assume the trust to be of that character. It is not charged that the plaintiff was a creditor of the defendant Barnes at the time of the execution of the trust deed. Therefore, though the deed was voluntary, and without consideration, it was not necessarily fraudulent as to him, and it is not alleged that the deed was made with the intent to defraud subsequent creditors. There is no allegation that the income from the trust property is more than is requisite for the support and maintenance of the cestui que trust. There is, therefore, but one question presented, and that a narrow one, whether such an interest, reserved for his own benefit by the founder of a trust, is subject to the claim of his creditors.

In England, for a long period, the law has been settled that the interest or income of the equitable life tenant, with the single exception of a trust for a married woman, is alienable by the beneficiary, passes to an assignee in bankruptcy, and is at all times subject to the claims of creditors. Nor will any provision in the trust deed that the income shall be inalienable, or shall not be anticipated, be effective. The trust deed may provide that, on the bankruptcy or alienation of the first beneficiary, the interest of that beneficiary shall cease, and the income thereafter go to another person. But, as long as the income is payable to any particular beneficiary, it is not possible to withdraw it from satisfaction of the debts

of such person. Perry, Trusts, §§ 386–388. The question now before us could, therefore, not arise in that country. The English rule prevailed in this state until the enactment of the Revised Statutes. It was also adopted for a time in most of the other states, but of late, in a majority of the states and in the courts of the United States, the English rule does not obtain, and this, in most cases, without any statutory enactment abrogating it. The doctrine now held is "that the owner of property may, in the free exercise of his bounty, so dispose of it as to secure its enjoyment to the objects of his bounty, without making it alienable by them or liable for their debts." Nichols v. Eaton, 91 U. S. 716; Bank v. Adams, 133 Mass. 170; White v. White, 30 Vt. 338; Pope's Ex'rs v. Elliott, 8 B. Mon. 56; Brown v. Williamson's Ex'rs, 36 Pa. St. 338; Fisher v. Taylor, 2 Rawle, 33. But this principle is not applied where the owner of the property is the founder of the trust, and he himself the object of his own bounty. In Bank v. Windram, 133 Mass. 175, it was held that a person cannot settle his property in trust to pay the income to himself for life, with a provision that it shall not be alienated by anticipation, so as to prevent creditors from reaching the income; and that even in the case of a married woman. It is there said:

"The general policy of our law is that creditors shall have the right to resort to all the property of the debtor, except so far as the statutes exempt it from liability for his debts. But this policy does not subject to the debts of the debtor the property of another, and is not defeated when the founder of a trust is a person other than the debtor. * * * Creditors of the beneficiary have no right to complain that the founder did not give his property for their benefit, or that they cannot reach a greater interest in the property than the debtor has, or ever had. But when a man settles his property upon a trust in his own favor, with a clause restraining his power of alienating the income, he undertakes to put his own property out of the reach of his creditors, while the retains the beneficial use of it. * * * To permit a man thus to attach to a valuable interest in property retained by himself the quality of inalienability and of exemption from his debts seems to us to be going further than a sound public policy will justify. No authorities are cited in favor of such a rule."

In Mackason's Appeal, 42 Pa. St. 330, it was held that one sui juris cannot, as against creditors, either prior or subsequent, settle his property in trust for his own use for life. It is there said:

"This statement brings us to the simple inquiry, can the owner of property so dispose of it, for his own use, benefit, and support, as to put it beyond the reach of liability for his future debts, he being and continuing sui juris, and there appearing to be no reason therefor, excepting to withdraw it from such liability, and thus retain the temporal ownership without its incidents? This would be a startling proposition to affirm. It would revolutionize the credit system entirely, destroy all faith in the apparent ownership of property, and repeal all our statutes and decisions against fraud."

In McIlvaine v. Smith, 42 Mo. 45, it was held that:

"A party cannot tie up his own property, under a trust, in such manner that he may be enabled to enjoy the income thereof and set his creditors at defiance."

I shall not pursue this subject further. In the recent work of Prof. Gray on Restraints on the Alienation of Property there is found a most exhaustive review of all the authorities, American and English, bearing on the question. Though, as the author ad-

mits, the work was written with the intention of enforcing the author's views of what should be the law, as well as to show what in fact is the state of the law, the labor bestowed towards the first purpose has been in no manner at the expense of the second. Whether we share the economic views of the author on the subject of spendthrift trusts or not, the work remains a masterpiece of research in the collation of adjudicated cases and of legal acumen in the analyses of those cases.　Prof. Gray says (section 91):

"It is deemed against public policy to allow a man to settle property on himself until his death or bankruptcy, and then over, or to settle a life interest which he possesses upon himself until bankruptcy, and then over.　In either case, upon his bankruptcy, an interest for his life passes to his assignees. This rule must not be confounded with the doctrine that a man cannot make a voluntary conveyance in fraud of his creditors.　This present rule goes further, and forbids a man, even for good consideration, to make a grant over of his life interest, contingent on his bankruptcy as a condition precedent. If he reserves a life interest, it will go to his assignees in bankruptcy, despite any condition or limitation, even though the gift over after his death is valid, because made on good consideration."

I can find no case in conflict with the doctrine thus declared, with the exception of some dicta in certain New York cases, which are so plainly obiter as not to require discussion.　Bank v. Eames, 4 Abb. Dec. 83; Bryan v. Knickerbacker, 1 Barb. Ch. 409.　I think it may safely be said that nowhere, unless it be in this state, can a man put his property beyond the reach of creditors, and yet retain a beneficial interest therein.　The proposition itself would seem to shock our sense of justice.　This being the general rule of law, it is necessary to see whether it has been changed by the Revised Statutes of this state.　The only provision that can have accomplished such a result is section 63, pt. 2, p. 730, Rev. St.:

"No person beneficially interested in a trust for the receipt of the rents and profits of lands can assign or in any manner dispose of such interest."

It is unquestionable that this section has abrogated the English rule where the trust property proceeds from a stranger.　For a long time it was doubted whether it had not saved the whole income of the equitable life tenant from the claims of creditors, even though the income exceeded what was necessary for the proper maintenance, use, and support of the life tenant.　The question was finally determined in Williams v. Thorn, 70 N. Y. 270, where it was held not to exempt that part of the income which might not be necessary for the support of the debtor.　I doubt very much whether this section was intended to apply to a case where the debtor himself creates the trust.　I find no special note of the revisers on this section, which is singular, considering the great change in law which it effected.　The note to section 55 shows that the object of the section was to make provision for the maintenance of infants, married women, and improvident persons.　The opinion prevalent at the time of the enactment of the Revised Statutes was that a trust could be created only for the benefit of beneficiaries of that character.　In the first great will case that arose after the Revised Statutes (Coster v. Lorillard, 14 Wend. 265), in three of the five opinions delivered in the court of errors, the trusts created by the will were regarded as void be-

cause the beneficiaries were competent persons. The same view was taken by the chancellor in Farnham v. Campbell, 10 Paige, 598. It is well known that the law was finally settled otherwise, and that a trust can be created for the benefit of any person. I refer to these authorities only to show that it was never contemplated by the authors of the Revised Statutes to give the property of a debtor the immunity from his debts here contended for, whether, in fact, they have effected that result or not.

But this is not the only provision of the statute bearing on the subject. By sections 38, 39, p. 174, 2 Rev. St., it is provided:

"Sec. 38. Whenever an execution against the property of a defendant, shall have been issued on a judgment at law, and shall have been returned unsatisfied, in whole or in part, the party suing out such execution, may file a bill in chancery against such defendant, and any other person, to compel the discovery of any property or thing in action, belonging to the defendant, and of any property, money, or thing in action, due to him, or held in trust for him; and to prevent the transfer of any such property, money or thing in action, or the payment or delivery thereof, to the defendant, except where such trust has been created by, or the fund so held in trust has proceeded from, some person other than the defendant himself.

"Sec. 39. The court shall have power to compel such discovery, and to prevent such transfer, payment or delivery, and to decree satisfaction of the sum remaining due on such judgment, out of any personal property, money or things in action belonging to the defendant, or held in trust for him, with the exception above stated, which shall be discovered by the proceedings in chancery, whether the same were originally liable to be taken in execution at law or not."

By the statute a cestui que trust, in a trust of this character, has no estate, legal or equitable, in the lands, but merely a right to enforce performance of the trust in equity. The interest of the beneficiary is, therefore, not real estate, but a thing in action, and in this case falls within the terms of the section, and not within its exception, for the trust was created by the debtor himself. The only way this conclusion can be avoided is to hold that the rights of action contemplated by these provisions of the statute are solely rights of action relating to personalty, and not proceeding in any manner from real estate. I know of no reason for so limiting the statutory provisions. On the contrary, the history of the development of the law, under the statute of uses and trusts, shows that the courts of this state have at all times sought to assimilate the rights of creditors to estates or interests in lands, or the income thereof, with their rights in personal property. Williams v. Thorn, supra; Cochrane v. Schell, 140 N. Y. 516, 35 N. E. 971. The statutory provision that the trust income shall be inalienable is in terms confined to real estate, yet the courts have determined that it equally applies in the case of a trust of personal property. The same is true as to the provisions of section 57, that surplus of income shall be liable in equity to the claims of creditors. In terms the section is confined to real estate. By the decisions of the courts it applies also to personalty. To confine the application of sections 38 and 39 to rights of action proceeding from personalty would be to act in a direction contrary to that in which nearly every decision of the courts on the much-vexed subject of uses and trusts has proceeded.

There is another consideration to be borne in mind. I shall not attempt to determine the effect of section 1, p. 135, 2 Rev. St., that the transfer of personal property or choses in action in trust for the use of the person making the transfer is absolutely void as to subsequent as well as existing creditors. Judge Comstock, in Curtis v. Leavitt, 15 N. Y. 122, after reciting the history of the statute, intimates that its purpose has been overestimated, and that its effect is to render subject to creditors only the interest reserved by the assignor. Young v. Heermans, 66 N. Y. 374, however, seems an exact authority to the effect that the transfer is void in toto, and that both principal and income can be seized by the creditor. If the contention of the present respondents prevails, this curious result would follow: If a man should place 10 shares of railroad bonds or a $1,000 bond in trust, the income payable to himself, and on his death the principal to his children, both income and principal could be seized by the creditor. But if he should create a similar trust of real estate, it may be of the value of hundreds of thousands of dollars, the income would be beyond the reach of his creditors, providing his mode of life has been sufficiently luxurious, expensive, or extravagant to require the whole income to support him in the state or condition to which he had been accustomed. It would seem, too, by Stow v. Chapin (Sup.) 4 N. Y. Supp. 496, that the fact that a single man possesses an annual income of over $25,000, proceeding from a trust fund the principal of which exceeds half a million, creates no presumption that the income is in excess of what is requisite for the debtor's proper support. Certainly there has never been any disposition displayed in this state, either by lawmakers, courts, or publicists, to favor a system of landed estates. We should not support a doctrine that would lead to the incongruous, as well as unjust, results indicated, unless the statute makes it impossible for us to avoid it. This, we think, is not the case. In what manner the debtor's life interest shall be appropriated to the plaintiff's claim,—whether by collecting the rents, and applying the income from time to time upon the judgment, or by a sale of the life estate for a similar object,—it is unnecessary to determine. We hold that in some manner or other the debtor's interest is subject to the plaintiff's judgment.

The interlocutory judgment should be reversed, and judgment directed for plaintiff on demurrer, with costs, with leave to defendants within 20 days to withdraw demurrer, and answer, on payment of such costs. All concur.