STATE *v.* HEINITZ ESTATE.

1. INSANE PERSONS—ADMISSION OF INSANITY—EVIDENCE.

An admission of decedent's insanity was effected by his estate and everyone interested therein so as to preclude an inquiry into the question of the regularity of the order committing him to the asylum in which he remained for a period of 38 years until his death, where, shortly after his commitment to which his wife had consented in writing, she filed a petition for appointment of a guardian, alleging his mental incompetence, and no claim that the commitment was a nullity was made in reimbursement proceedings some 16 or more years after his commitment and no one brought any action to cause his release or to have him judicially declared restored to sanity.

2. SAME—REIMBURSEMENT OF STATE FOR CARE IN STATE HOSPITAL—PROBATE COURT ORDER—AUTHORITY.

Order of probate court requiring guardian of estate of an incompetent person to make payment of $750 in settlement of State's claim for $5,370.92 for mental incompetent's care and maintenance as an insane public patient could not and did not release his estate from liability for expenses thereafter incurred by the State on his behalf as the probate court had no power beyond that conferred by statute and will not be presumed to have intended to act beyond the scope of its authority (CL 1929, § 6894).

---

REFERENCES FOR POINTS IN HEADNOTES
[2, 3] 28 Am Jur, Insane and Other Incompetent Persons §§ 42, 43.

3. Same—Reimbursement of State for Care in State Hospital—
Future Expenses—Probate Court—Authority.

Estate of insane person was liable for reimbursement to State for expenses incurred in his behalf following end of previous period for which reimbursement was claimed, since the probate court, although empowered to require guardian to appropriate a part of such estate for reimbursing the State for future expenses, could not require him to pay them before they had been incurred (CL 1929, § 6894).

Appeal from Tuscola; Quinn (Timothy C.), J. Submitted January 8, 1958. (Docket No. 18, Calendar No. 47,170.) Decided April 15, 1958.

The State of Michigan petitioned for reimbursement from the estate of Henry Heinitz, a mentally incompetent person, subsequently deceased, for care and keep in State mental hospital. From a judgment allowing major portion of claim, administratrix appeals. Affirmed.

*Paul L. Adams*, Attorney General, *Samuel J. Torina*, Solicitor General, *T. Carl Holbrook* and *Eugene F. Townsend*, Assistants Attorney General, for plaintiff.

*Clarence M. Mikolajczak* (*Karl K. Leibrand*, of counsel), for defendant.

Dethmers, C. J. In February of 1917 an order entered in probate court committing defendant's decedent to the Pontiac State Hospital as an insane public patient, he was admitted, and remained there as a patient until his death on December 12, 1955. No proceedings ever were brought to effect his release or to have him adjudged restored to sanity. In October of 1917 his wife, who had consented in writing to the above order, filed a petition in probate court stating that he was mentally incompetent and

an inmate of the State hospital for the insane and praying that she be appointed guardian. An order entered accordingly and she and successors served as guardians continuously thereafter, under probate court orders, until his death. In 1933, after the wife had died and decedent's children were all of full age, the State filed a claim in probate court against the guardian for reimbursement for decedent's care and maintenance up to June 30, 1933, in the amount of $5,370.92. Hearing was had on the claim in 1935. Nothing appears in the record to indicate that the guardian or anyone else then challenged the validity of the commitment order. In April of 1935, following said hearing, the probate court entered an order directing the guardian to pay the State, out of the estate, on said claim the sum of $750. The order further provided that upon the State's receipt of such payment the property of the estate "shall be released from all further claims of the State of Michigan which seek reimbursement to the State for moneys expended in providing care for Henry Heinitz at any Michigan State Hospital." The guardian paid the $750 out of the estate to the State.

In 1955 the State filed a further petition for reimbursement which, as later amended, covers the period from August, 1923, until decedent's death in 1955. The probate court disallowed the claim. On appeal the circuit court allowed it in part, for the period subsequent to that covered by the 1935 order for reimbursement, namely, from June 30, 1933, until date of decedent's death in 1955, in a total amount of $12,340.83. Defendant appeals.

Defendant contends that the State is not lawfully entitled to reimbursement because the 1917 commitment order was a nullity by reason of alleged defects in the proceedings. In response, the State relies on *State of Michigan* v. *Dunbar Estate,* 99 Mich 99, in which, under similar circumstances and contentions,

this Court allowed the State's claim for reimbursement, saying (pp 102, 103):

"As to the question of whether the ward was properly admitted to the asylum, it stands admitted in the record that he is now, and has been since 1868, insane; and that on the first day of January, 1879, said Bela M. Dunbar became a State charge by virtue of the laws of this State, and from January 1, 1879, till March 31, 1892, was maintained at the expense of the State. This would seem to preclude an inquiry into the question of the regularity of the order committing Dunbar to the asylum."

Defendant would distinguish on the ground that in *Dunbar,* as this Court noted, it stood admitted in the record that the inmate had been insane all along, while in the instant case the record contains no express admission of decedent's insanity. We think the distinction tenuous in view of the facts which are disclosed by this record. Within a few months after decedent's commitment, to which his wife had consented in writing, she filed a petition for appointment of a guardian, alleging decedent's mental incompetence. He was under guardianship during the 38 remaining years of his life. His children, now the heirs to his estate, were all of full age in 1933. No claim was made by them nor by the guardian of his estate in the 1933 reimbursement proceedings that his commitment was a nullity. Instead, his estate entered into an agreement settling the State's claim and paid accordingly. During the entire 38 years that decedent was an inmate in the State hospital neither he, his guardian, his wife, his children, anyone in his behalf, nor any person interested in his estate, brought any action to cause his release or to have him judicially declared restored to sanity. We think all this amounts to as effective an admission of decedent's insanity by his estate and everyone interested in it as was the

express admission on the record by the estate itself in *Dunbar,* so as to bind the estate on the question of decedent's insanity and thus "to preclude an inquiry into the question of the regularity of the order committing  *  *  *  to the asylum."

Defendant urges that the 1935 reimbursement order of the probate court released the estate from liability for reimbursement of the State for expenses thereafter incurred by it on decedent's behalf. The probate court had statutory authority (CL 1929, § 6894)* to order the estate to reimburse the State "for the expenses thereto incurred by it on behalf of such mentally diseased person" and presumably in a smaller amount apparently representing a compromise settlement agreed upon by the parties. Although there was authority conferred by that statute to require the guardian to appropriate a part of such estate towards reimbursing the State for future expenses, there was none empowering the court to require the estate to pay such expenses before they had been incurred by the State or to relieve the estate from full liability therefor in the future after they had been incurred. The probate court had no power beyond that conferred by statute. *MacKenzie* v. *Union Guardian Trust Co.,* 262 Mich 563. It follows that it would not have been competent for the probate court to order a payment in compromise settlement of the unknown amount of expenses which might be incurred on decedent's behalf by the State in the future. It is not to be presumed that the probate court intended to act beyond the scope of its authority. A reading of the plain language of the order requires no conclusion that it did so. We think the meaning of the 1935 order is that, upon making the agreed part payment, the property of the estate was to be released from further liability for reimburse-

---

* See, currently, CL 1948, § 330.27 (Stat Ann 1956 Rev § 14.817).—
REPORTER.

ment for expenses thereto incurred by the State up to June 30, 1933, that being the end of the period involved in the claim then before the probate court.

Affirmed, with costs to plaintiff.

CARR, KELLY, SMITH, BLACK, EDWARDS, and VOELKER, JJ., concurred.

KAVANAGH, J., did not sit.

